944 F.2d 1047
 137 L.R.R.M. (BNA) 2781, 119 Lab.Cas. P 10,918
 EICHLEAY CORPORATION,
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND
ORNAMENTAL IRON WORKERS; United Brotherhood of Carpenters
and Joiners of America; Laborers International Union of
North America; Operative Plasterers and Cement Masons
International Association of the United States and Canada;
International Union of Operating Engineers; and
International Brotherhood of Boilermakers, Iron Ship
Builders, Blacksmiths, Forgers and Helpers. (Two Cases)
CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA;
Carpenters Pension Trust Fund for Northern California;
Carpenters Vacation and Holiday Trust Fund for Northern
California; Carpenters Apprenticeship and Training Trust
Fund for Northern California; and Carpenters Annuity Trust
Fund for Northern California
v.
EICHLEAY CORPORATION, ECI, Inc., d/b/a Eichleay
Constructors, Inc.; Eichleay Holdings, Inc.; AMK
International.
CALIFORNIA IRON WORKERS FIELD WELFARE PLAN; California Iron
Workers Field Pension Trust Fund; California Field Iron
Workers Vacation Trust Fund; California Field Iron Workers
Apprenticeship Training and Journeyman Retraining Trust
Fund; California and Vicinity Field Iron Workers Annuity
Trust Fund; California Field Iron Workers Administrative Trust Fund
v.
EICHLEAY CORPORATION, ECI, Inc., d/b/a Eichleay
Constructors, Inc.; Eichleay Holdings, Inc.; AMK
International.
OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND; Pension
Trust Fund for Operating Engineers; Pensioned Operating
Engineers Health and Welfare Fund; Operating Engineers &
Participating Employers Pre-Apprenticeship; Apprentice &
Journeyman Affirmative Action Training Fund; Operating
Engineers Vacation & Holiday Plan; Operating Engineers
Contract Administration Trust Fund; Operating Engineers
Market Preservation Trust Fund; Operating Engineers
Industry Stabilization Trust Fund
v.
EICHLEAY CORPORATION, ECI, Inc., d/b/a Eichleay
Constructors, Inc.; Eichleay Holdings, Inc.; AMK
International.
CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA; Cement Masons Pension Trust Fund for Northern
California; Cement Masons Vacation Trust Fund for Northern
California; Cement Masons Apprenticeship and Training Trust
Fund for Northern California
v.
EICHLEAY CORPORATION, ECI, Inc., d/b/a Eichleay
Constructors, Inc.; Eichleay Holdings, Inc.; AMK
International.
LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA; Laborers Vacation-Holiday Trust Fund for
Northern California; Laborers Pension Trust Fund for
Northern California; Laborers Training and Retraining Trust
Fund for Northern California
v.
EICHLEAY CORPORATION, ECI, Inc., d/b/a Eichleay
Constructors, Inc.; Eichleay Holdings, Inc.; AMK
International.
International Association of Bridge, Structural and
Ornamental Iron Workers; United Brotherhood of Carpenters
and Joiners of America; Laborers' International Union of
North America; Operative Plasters' and Cement Masons'
International Association of the United States and Canada;
International Union of Operating Engineers; International
Brotherhood of Boilermakers, Iron Ship Builders,
Blacksmiths, Forgers and Helpers; Carpenters Health and
Welfare Trust Fund for California; Carpenters Pension Trust
Fund for Northern California; Carpenters Vacation and
Holiday Trust Fund for Northern California; Carpenters
Apprenticeship and Training Trust Fund for Northern
California; Carpenters Annuity Trust Fund for Northern
California; California Iron Workers Field Welfare Plan;
California Iron Workers Field Pension Trust Fund;
California Field Iron Workers Vacation Trust Fund;
California Field Iron Workers Apprenticeship Training and
Journeyman Retraining Trust Fund; California and Vicinity
Field Iron Workers Annuity Trust Fund; California Field
Iron Workers Administrative Trust Fund; Operating Engineers
Health Welfare Trust Fund; Pension Trust for Operating
Engineers; Pensioned Operating Engineers Health and Welfare
Fund; Operating Engineers & Participating Employers
Pre-Apprenticeship, Apprentice & Journeyman Affirmative
Action Training Fund; Operating Engineers Vacation &
Holiday Plan; Operating Engineers Contract Administration
Trust Fund; Operating Engineers Market Preservation Trust
Fund; Operating Engineers Industry Stabilization Trust
Fund; Cement Masons Health and Welfare Trust Fund for
Northern California; Cement Masons Pension Trust Fund for
Northern California; Cement Masons Vacation Trust Fund for
Northern California; Cement Masons Apprenticeship and
Training Trust Fund for Northern California; Laborers
Health and Welfare Trust Fund for Northern California;
Laborers Vacation-Holiday Trust Fund for Northern
California; Laborers Pension Trust Fund for Northern
California; Laborers Training and Retraining Trust Fund for
Northern California, Appellants.
EICHLEAY CORPORATION
v.
SHEET METAL WORKERS INTERNATIONAL ASSOCIATION
Sheet Metal Workers International Association; and Local
104 of the Sheet Metal Workers' International
Association, Appellants.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO;
Local 302 of the International Brotherhood of Electrical
Workers, AFL-CIO; United Association of Journeymen and
Apprentices of the Plumbing and Pipe Fitting Industry of the
United States and Canada, AFL-CIO; Steamfitters Local 342
of the United Association of Journeymen and Apprentices of
the Plumbing and Pipe Fitting Industry of the United States
and Canada, AFL-CIO, Appellants,
v.
EICHLEAY CORPORATION, a/k/a Eichleay Constructors, Inc.,
and/or ECI, and/or AMK International.
 Nos. 90-3637, 90-3692 and 90-3693.
 United States Court of Appeals, Third Circuit.
 Argued March 8, 1991.
 Decided July 1, 1991.
As Amended Sept. 4, 1991.
 
 Victor J. Van Bourg, Sandra Rae Benson, (argued), Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for appellants in No. 90-3637.
 James Kuhn, III, Kuhn, Engle & Stein, Pittsburgh, Pa., for appellants in No. 90-3637.
 Peter D. Nussbaum (argued), Daniel T. Purtell, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, Cal., for appellants in Nos. 90-3692 and 90-3693.
 Richard Resnick, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, D.C., for appellants in Nos. 90-3692 and 90-3693.
 Stanford Segal, Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., for appellants in Nos. 90-3692 and 90-3693.
 Judith Rivlin, Sheet Metal Workers Intern. Union, Washington, D.C., for appellants in No. 90-3692.
 Brian A. Powers, O'Donoghue & O'Donoghue, Washington, D.C., for appellants in No. 90-3693.
 Peter G. Nash (argued), Ogletree, Deakins, Nash, Smoak and Stewart, Washington, D.C., for appellee in Nos. 90-3637, 90-3692, 90-3693.
 Before BECKER and NYGAARD, Circuit Judges and GREEN, District Judge*.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 In these consolidated appeals, we again address the great deference due arbitrators' decisions in labor disputes. The appellant Unions[1] contest the district court's order vacating a series of arbitration awards favorable to them. We will affirm in part and reverse in part.
 
 I.
 
 2
 This acrimonious dispute between Eichleay Corporation ("Eichleay") and the plaintiff Unions (collectively the "Unions") arose in 1985. Eichleay, a union shop construction company, and the Unions were parties to collective bargaining agreements known as the National Maintenance Agreements ("NMA"). Early in July 1985, Eichleay reorganized its operations. A subsidiary known as Eichleay Constructors, Inc. ("ECI") was formed to engage in open shop construction nationwide. Eichleay Holdings, Inc. was formed in August of 1985 to hold the stock of Eichleay and ECI, as well as the stock of Eichleay Engineers of Pennsylvania and Eichleay Engineers of Illinois, two former subsidiaries of Eichleay.
 
 
 3
 During the latter part of that year, Geoff Eichleay, President and CEO of Eichleay, a union shop contractor, learned that USS Posco, a joint venture of US Steel and Pohang Iron and Steel, a Korean company, planned to modernize a steel mill in Pittsburg, California. This Pitcal project involved renovating the finishing plant portion of the mill, installing a pickle line tandem cold mill and a continuous annealing line. Eichleay became interested in bidding on all or part of the construction work connected with the Pitcal Project.
 
 
 4
 When USS Posco first solicited bids for the Pitcal project, Geoff Eichleay directed an Eichleay sales staff member to learn the specifics of the job and identify potential competitors. Eichleay representatives then met with USS Posco officials to get preapproved for the short bid list, qualifying Eichleay to submit a final bid on the project.
 
 
 5
 Eichleay did not make the short bid list, apparently because USS Posco feared that Eichleay was not a large enough company to handle the job. USS Posco suggested that Eichleay form a joint venture with one of the six companies on the short bid list and continue bidding on the project. Eichleay then entered into an agreement with Morrison-Knudsen ("Morrison") to bid on the project as a joint venture, on the condition that concessions be obtained from the building trades unions.
 
 
 6
 In order to get these concessions, Morrison and Eichleay approached the National Maintenance Agreement Policy Committee ("NMAPC") in July, 1986. The NMAPC is a jointly administered labor-management committee consisting of 14 representatives from craft unions and 14 representatives from unionized contractors. It provides a forum to interpret the NMAs. The NMAs, where extended to a particular site, set minimum pay levels, report times and bind the contractor to union hiring practices. Eichleay signed NMAs with all the craft unions in this case except for the IBEW.
 
 
 7
 At the meeting with the NMAPC, Eichleay and Morrison requested the NMAs be extended to the Pitcal project and that the Unions grant concessions. Specifically, the contractors requested that the wage and benefit package of the craft employees be modified to 80% of the total package, that 40% of the workforce be comprised of apprentices, and that the apprentices work at 70% of the 80% modified package. The outcome of this meeting is in dispute.
 
 
 8
 The Unions contend that the NMAs were extended to the project and the requested concessions were granted at the meeting. Eichleay asserts that the NMAPC merely stated that the NMAs could cover the type of work involved in the Pitcal project and that concessions would have to be negotiated with the local unions in California. The minutes of the meeting indicate that the NMAs were extended to the Pitcal project, but not that the concessions were approved.
 
 
 9
 On July 10, 1986, Eichleay and Morrison met in California with the Subcommittee of the NMAPC and representatives of the local unions to discuss concessions. The contractors told the local unions that they needed to know if the concessions would be granted in order to continue in the bidding. The contractors requested that the unions decide on the concessions by July 21, 1986.
 
 
 10
 On July 21, Eichleay was informed that, although the vote was unofficial, the unions had refused to grant the concessions. Eichleay determined that, without union concessions, it could no longer participate in a joint venture on the Pitcal project and dropped out of the bidding process.
 
 
 11
 Immediately after Eichleay dropped out of the bidding, Geoff Eichleay directed officers of ECI to explore the possibility of forming a joint venture to bid on the Pitcal project. Subsequently, a joint venture was formed between ECI, BE & K, and Daelim America, Inc. ("Daelim"). Both BE & K and Daelim are open shop contractors. BE & K was already on the short bid list for the Pitcal project.
 
 
 12
 In December 1986, USS Posco announced that BE & K had been awarded the contract for the Pitcal construction project. On December 30, 1986, BE & K, Daelim and ECI formally entered into a joint venture known as AMK International. Forty percent of AMK was owned by BE & K, forty percent by ECI, and twenty percent by Daelim. By the joint venture agreement's terms, BE & K was designated as the lead contractor on the project. USS Posco agreed to allow the joint venture to perform the work, so long as BE & K remained fully responsible for the construction contract.
 
 
 13
 BE & K chose the project manager for AMK and supplied most of AMK's salaried employees. ECI supplied about half as many salaried employees to AMK as BE & K. BE & K also recruited all craft employees and set wage levels and employment policies. BE & K established the hiring, personnel and accounting procedures for AMK. All personnel at the site involved in labor relations were BE & K employees.
 
 
 14
 In June 1987, six unions, who are now parties in the Ironworkers appeal, filed identical grievances against Eichleay with NMAPC. The grievances alleged that Eichleay, through its alter ego ECI, was performing work covered by the NMAs on the Pitcal site, that the NMAs had been extended to the Pitcal site, and that consequently Eichleay was in violation of each and every provision of the NMAs.
 
 
 15
 In July 1987, Eichleay requested a temporary restraining order in the Western District of Pennsylvania to enjoin the arbitration proceeding. The request was denied and the arbitration took place. Eichleay appeared at the arbitration hearing solely to object to NMAPC's jurisdiction over the dispute. The six unions then presented their case. The NMAPC sustained the unions' grievance and later issued findings of fact. The NMAPC found that the six unions had extended the NMAs to the Pitcal project by a ballot vote of the Unions.[2]
 
 
 16
 The NMAPC then considered the issue of whether Eichleay was the employer on Pitcal. The finding on this issue stated merely that "Eichleay Corporation is present at the project." The NMAPC then issued awards requiring Eichleay to make wage payments and trust fund contributions on behalf of the workers currently employed on the Pitcal site, and to make similar payments "on behalf of all those workers who would have been dispatched to the work in question to the contractor ... had the agreement been complied with."
 
 
 17
 Two more unions then filed identical grievances against Eichleay with the NMAPC. These unions are parties to the IBEW appeal. The NMAPC sustained these grievances for the same reasons given in the Ironworkers grievance.[3] Sheet Metal Workers' International Association then filed an identical grievance. It was also sustained for the reasons given in the Ironworkers case. This union is now party to the Sheet Metal Workers appeal.
 
 
 18
 Eichleay filed a timely petition in the Western District of Pennsylvania to vacate the arbitration awards in the Ironworkers case. The Unions cross-petitioned to confirm the awards. Eichleay received the IBEW award on February 15, 1988. The IBEW filed a petition with the district court to confirm the awards on March 17, 1988. Eichleay answered the petition in IBEW and cross-petitioned to vacate the award. Eichleay timely filed a petition to vacate the award in the Sheet Metal Workers case on May 6, 1988. The Sheet Metal Workers Union cross-petitioned to confirm the award.
 
 
 19
 Cross-motions for summary judgment were filed in the Ironworkers case. The district court determined first that the alter ego issue was excluded from arbitration by Article VI(2) of the NMA.[4] The district court then concluded that it would hold its decision on the issue of whether AMK, ECI and Eichleay were alter egos in abeyance pending the outcome of a unit clarification petition Eichleay had filed with the NLRB.
 
 
 20
 Although the court determined that the extension issue was arbitrable, it concluded the arbitration decision was unclear as to whether the NMAs had been extended to the Pitcal site. The district court suggested that NMAPC may have ignored its own procedures and the law of the shop in concluding that the NMAs could be extended without a specific agreement between the employer and the union. Consequently, the district court ordered the case remanded to the NMAPC so the NMAPC could clarify or reverse its ruling on extension.
 
 
 21
 Because of its determination on the alter ego and extension issues, the district court did not explicitly rule on Eichleay's contention that it had been denied due process in the arbitration hearing because the grieving Unions were allowed to vote on each others' grievances. The district court merely suggested that any "voting irregularity" be corrected on remand.[5]
 
 
 22
 In June 1989, the NMAPC reconsidered the consolidated cases on remand. Eichleay was permitted to submit a lengthy position paper, and the Unions relied on their previous submissions to the NMAPC. Eichleay's representative was not permitted to address the NMAPC, although a Union representative was. The same voting procedure to which Eichleay had objected previously was again used, with each grieving Union voting on the other eight Unions' grievances. The NMAPC then issued its decision which reaffirmed its prior awards. The NMAPC did nothing to clarify its prior determinations, stating merely "there was no reason to change its unanimous decision of July 23, 1987."
 
 
 23
 Shortly after NMAPC issued its first arbitration awards, Eichleay had filed unit clarification petitions with the National Labor Relations Board ("NLRB"). These petitions sought to exclude any and all employees at the Pitcal site from bargaining units covered by Eichleay's NMAs. The petitions were filed as to all Unions except the IBEW. Since Eichleay did not consider the IBEW a party to a NMA, there was simply no unit for the NLRB to clarify. Eichleay did file an unfair labor practice charge against the IBEW, which is still pending.
 
 
 24
 After hearings in Pittsburgh, Washington, and San Francisco, the NRLB's Regional Director in Pittsburgh issued an order on May 19, 1989. The Regional Director first confronted the Unions' contention that they had made no claim of representation in an appropriate unit at the Pitcal site. The Director concluded that the unit clarification petition was the proper vehicle for determining whether the Pitcal employees were part of the bargaining units covered by the NMAs. The Regional Director then found that ECI and Eichleay were closely related and satisfied the "single employer" test. However, the Regional Director did not go on to determine if Eichleay and ECI were alter egos, since the actual employer at the site was AMK. The Regional Director concluded that since AMK and ECI were not a single employer or alter ego, Eichleay's NMAs should not cover AMK's employees. The NLRB denied review of the Regional Director's decision, thus rendering the decision final.
 
 
 25
 Eichleay returned to the district court armed with the NLRB determination. After consolidating the cases, Eichleay moved for summary judgment, contending that the NLRB decision required that all nine awards be vacated. The Unions filed cross-motions to confirm the awards. The district court, on August 30, 1990, granted Eichleay's motion to vacate, denied the Unions' cross-motions, and dismissed the related trust fund lawsuits.[6]
 
 
 26
 The district court noted first that the Unions had conceded that the NLRB determination precluded enforcement of the awards to the extent the awards granted back pay and benefits to workers employed by AMK to work on the Pitcal project. Dist.Ct.Op. 20-21. However, the Unions argued that the Director's finding that Eichleay and ECI were a single employer would allow the court to read the arbitration awards to require Eichleay to make payments to the Unions based on the union members on the out of work list. The district court refused to consider the Unions' arguments based on the single employer theory, since the Unions had previously asserted that they were proceeding solely on an alter ego theory. Moreover, the district court noted that to bind non-signatory party ECI, it would have to find both single employer status and single bargaining unit status. Since the NLRB had not determined that ECI and Eichleay employees constituted a single unit, the district court opined that a remand to the NLRB would be necessary to resolve this question.
 
 
 27
 The district court instead addressed the alter ego theory. The court noted that the alter ego status of Eichleay/ECI, if it existed, was immaterial. The only status that mattered was that between AMK and ECI. Since the NLRB had found that AMK and ECI were not a single employer, and because single employer status is a necessary prerequisite to a finding of alter ego status, the district court concluded that it could not find ECI was Eichleay's alter ego.
 
 
 28
 After determining that the awards must be vacated as to the Ironworkers and Sheet Metal Workers cases, the district court considered the IBEW award. Although the IBEW was not a party to the NLRB proceeding, the district court concluded that the IBEW was in privity with the other Unions and should be bound by the NLRB decision. The district court did not reconsider the earlier arguments by the IBEW that Eichleay's petition to vacate was not timely filed.
 
 
 29
 The district court then went on to address the alternative arguments advanced by Eichleay: that the NMAPC had not properly determined the extension issue and that the proceeding had not satisfied due process. As to the first argument, the district court found the second NMAPC determination on this issue singularly unhelpful. Since further remand would not likely clarify the issue, and since the court's alter ego determination would preclude an award anyway, the district court declined to remand.
 
 
 30
 On the issue of the fairness of the proceedings, the district court concluded that the proceedings were fundamentally unfair since Eichleay was not permitted to be present at a hearing resolving the factual disputes pointed out by the court in its remand order. Further, the court found that the receipt of evidence was unfair, since Eichleay was not given access to the Unions' submissions, although the Unions did see Eichleay's position statement before the hearing. Also, the Unions were allowed to present other evidence at the hearing while Eichleay was barred from even attending. Finally, the court concluded that the NMAPC's adherence to the same voting procedures questioned in the remand order was "highly suspect." Dist.Ct.Op. p. 31. The district court ordered that the awards be vacated. The Unions appealed.
 
 
 31
 The district court had jurisdiction over the subject matter of these consolidated federal labor cases pursuant to 28 U.S.C. § 1331 and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We have jurisdiction over the final decision of the district court vacating the arbitrators' awards pursuant to 28 U.S.C. § 1291.
 
 II.
 
 32
 We subject the district court's grant of summary judgment to a plenary review. In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly narrow.[7] An arbitration award can be vacated only if it does not draw its essence from the collective bargaining agreement. Roberts & Schaefer Co. v. Local 1846, United Mine Workers of America, 812 F.2d 883, 885 (3d Cir.1987). The district court may not vacate an arbitration award merely because it would decide the merits differently. Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America, 896 F.2d 745, 747 (3d Cir.1990). So long as the arbitration award has some support in the record, and the arbitrator has not manifestly disregarded the law, we will affirm the award. Tanoma, 896 F.2d at 748-49.
 
 
 33
 Where, however, an award decides a representational issue court review is not so deferential. NLRB v. Paper Manufacturers Co., 786 F.2d 163, 167 (3d Cir.1986) ("Representation issues may not be decided by contract, and thus may not be decided by an arbitrator.") If an NLRB determination on the definition of the proper bargaining unit conflicts with an arbitration award, the NLRB decision will prevail. A. Dariano & Sons v. District Council No. 33, 869 F.2d 514, 520 (9th Cir.1989) (per Aldisert, J.). With these standards in mind, we turn to the contentions of the parties on appeal.
 
 III.
 
 34
 The Unions raise two distinct sets of arguments. The Ironworkers and the Sheet Metal Workers argue that the district court erred by first remanding the extension issue to the arbitration panel for clarification and then later vacating the awards. These Unions also contend that the district court erred by determining that the issue of alter ego status was excluded from arbitration. The IBEW argues that the district court erred by refusing to confirm its award, since Eichleay had failed to file a timely petition to vacate. Eichleay, relying primarily on the NLRB's findings on the proper definition of the unit, responds that the district court properly vacated the awards. We will address these issues seriatim.
 
 
 35
 A. The Ironworker's and Sheet Metal Worker's Appeals
 
 
 36
 The key to these cases lies in the interaction of the NLRB's decision and the arbitration awards. Eichleay argues that the NLRB's decision precludes enforcement of the arbitration awards.[8] The Unions concede[9] that the portion of the arbitration award that grants back pay and benefits to workers at the Pitcal site conflicts with the NLRB's finding that those workers are not part of the bargaining unit and that AMK and ECI/Eichleay were not a single-employer. However, the Unions insist that the remainder of the award involves contract damages and may be enforced despite the NLRB ruling.
 
 
 37
 The Unions rely on Building Materials & Construction Teamsters v. Granite Rock, 851 F.2d 1190 (9th Cir.), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988) for the proposition that, even after the NLRB had ruled that AMK was not the alter ego of Eichleay/ECI, the arbitration panel's award could also be read as including an award of contract damages for Eichleay's breach of the NMAs in establishing ECI.
 
 
 38
 Granite Rock involved a concrete manufacturer which had signed a collective bargaining agreement with the Teamsters. The concrete manufacturer activated an assetless subsidiary, loaning it large amounts of cash, and the subsidiary in turn established a new, non-union concrete ready-mix plant. The union then sought arbitration, alleging both that the union concrete company and its non-union subsidiary were alter egos, and that the union company's actions in setting up the non-union subsidiary breached an implied covenant in its collective bargaining agreement.
 
 
 39
 The company successfully sought unit clarification from the NLRB, with the NLRB holding that the union company and its non-union subsidiary were not alter egos and that the non-union subsidiary could not be bound to its parent company's collective bargaining agreement. The union nevertheless sought to arbitrate its contractual claim that the parent company had breached an implied covenant not to establish a non-union subsidiary.
 
 
 40
 The court in Granite Rock distinguished the union's claim that the unionized company and its non-union subsidiary were alter egos from the union's claim that the unionized company had breached an implied covenant in the collective bargaining agreement. The court noted:
 
 
 41
 The union's contractual claim, in contrast [to its alter ego claim], is based on the allegation that Granite Rock promised in the agreement to refrain from establishing a separate company unless the economic standards provided in the agreement were applied to the separate company's employees. These claims are clearly distinct; the first alleges a breach of an ongoing legal duty to apply the provisions of the agreement to [the non-union subsidiary's] employees, while the second alleges a completed breach of a contractual duty to refrain from establishing a separate company.
 
 
 42
 Granite Rock, 851 F.2d at 1195-96.
 
 
 43
 The Unions argue that, even if the arbitration panel's award of back pay and benefits to AMK employees at the Pitcal site cannot stand in the face of the NLRB's finding that Eichleay/ECI and AMK are not a single employer, its award also granted breach of contract damages that are not affected by the NLRB decision. We agree with the Granite Rock court that arbitration awards may be divided into contract based awards and representation based awards. We must therefore determine in this case whether the Unions submitted a contractual claim to the arbitration panel.
 
 
 44
 The grievance itself (identical for all the Unions) claimed that Eichleay was in violation "of each and every, all and singular of the provisions of those agreements since the date of the commencement of their work on the project." The grievance was directed against Eichleay "d/b/a ECI, and/or AMK International, and/or under any other name and/or style under which it does business." The NMAs, which were essentially identical for all the Unions, provide that "[t]his Agreement covers all work assigned by the Owner to the Contractor and performed by the Employees of the contractors covered by this Agreement." NMA, Article IV, sec. 1. The Management Clause, Article XXIII, affords Eichleay considerable latitude to hire and fire and to "control the operation of all his work." This clause however, reserves to the Unions the right to utilize the grievance procedures if "in its judgement [sic] the spirit and intent of this Agreement has been violated." NMA, Article XXIII, sec. 1 (emphasis supplied).
 
 
 45
 The grievance submitted by the Unions was broad enough to encompass a claim that Eichleay had violated the NMAs by directing work to its alter ego ECI in an effort to avoid its collective bargaining responsibilities. The Unions could argue based on that grievance that an implied covenant not to set up a non-union competitor existed in the NMAs and that Eichleay breached that implied covenant by creating ECI and directing the Pitcal work to it.
 
 
 46
 The arbitration panel's award is susceptible to such a reading. The NMPAC's arbitration award granted to the Unions:the payment of wages and trust fund contributions to and on behalf of each of the workers who have been employed by the contractor and any of it's [sic] subcontractors at any tier, and the payment of wages and trust fund contributions to and on behalf of all those workers who would have been dispatched to the work in question ... had the Agreement been complied with.
 
 
 47
 App. p. 453 (emphasis supplied). The highlighted portion of the award clearly is representational in nature and must fall in the face of the contrary NLRB decision. Thus, we will affirm the district court to the extent that it vacated the arbitration panel's award of back pay and benefits to Pitcal workers. See A. Dariano & Sons, 869 F.2d at 517.
 
 
 48
 The second portion, however, does not implicate a representational issue. Instead, we agree with the Unions that it is compensation for Eichleay's breach of the Agreement by creating a "corporation to which it transferred work to avoid the collective bargaining agreement." Ironworkers Brief at p. 29.
 
 
 49
 Having concluded that the arbitration panel awarded breach of contract as well as representational damages, we must determine if the nonrepresentational part of the award should have been confirmed by the district court. The district court concluded that, in the absence of an alter ego relationship between ECI/Eichleay and AMK, the entire arbitration award must fall. This is incorrect. To find that Eichleay used ECI to bid on the Pitcal project to avoid Eichleay's collective bargaining agreements requires only a finding that Eichleay and ECI were alter egos.
 
 
 50
 The district court refused to defer[10] to the arbitration panel's finding of alter ego status.[11] Although the district court properly concluded that the broad grievance clause of the NMA, which calls for arbitration of "all grievances", could incorporate alter ego issues, see e.g. Local No. 6, Bricklayers Int'l Union of America v. Boyd G. Heminger, Inc., 483 F.2d 129 (6th Cir.1973) (issue of whether company which was signatory to a collective bargaining agreement had created a sham or alter ego company to avoid its obligations was arbitrable), it erred by concluding that the NMAs specifically exempted alter ego questions from arbitration. The district court relied on Article VI, sec. 2 of the NMA which provides:
 
 
 51
 The arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this Agreement.
 
 
 52
 The Supreme Court instructs us that, if an issue is to be excluded from arbitration, it should be expressly excluded, or if not expressly excluded, "only the most forceful evidence of a purpose to exclude the claim from arbitration" will suffice to exclude the claim. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419-20, 89 L.Ed.2d 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1353-54, 4 L.Ed.2d 1409 (1960)). We do not read the NMAs to exclude alter ego issues from arbitration. The article of the NMAs relied upon by the district court merely defines the arbitration panel's duties: to interpret the contract.
 
 
 53
 The NMAs do in fact expressly exclude some issues from arbitration. Article VI of the NMAs expressly excludes grievances pertaining to jurisdictional disputes or general wage rate disputes. This indicates that the parties knew how to remove issues from arbitration when they wanted to. In the absence of an express exclusion or very definite evidence that the parties intended to remove alter ego issues from arbitration, we conclude that the arbitration panel properly considered whether Eichleay created an alter ego company to avoid Eichleay's responsibilities under the collective bargaining agreement.[12]
 
 
 54
 The arbitration panel's determination that Eichleay and ECI were alter egos at the time ECI bid on the Pitcal project should have been confirmed by the district court. Court review of arbitration awards is extremely deferential. See, e.g., Tanoma Mining, 896 F.2d at 748-49. An award must be confirmed unless it is "irrational." Roberts & Schaefer Co., 812 F.2d at 885. In this case, there is support for a panel finding of an alter ego relationship between Eichleay and ECI.
 
 
 55
 The elements necessary for a finding of alter ego status are substantial identity of management, business purpose, operation, equipment, customers, supervision and ownership between the two corporations. NRLB v. Al Bryant, Inc., 711 F.2d 543, 553 (3d Cir.1983), cert. denied, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). This inquiry is essentially the same as that used for a finding of single employer status. Al Bryant, 711 F.2d at 551 (In determining single employer status, four elements are considered: interrelation of operations, common management, centralized control of labor relations, and common ownership). The ultimate focus of alter ego analysis, however, is "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations." Ibid (quoting Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489 at 508 (5th Cir.1982)).
 
 
 56
 In this case, there was ample evidence from which the arbitration panel could conclude that ECI and Eichleay were alter egos. ECI and Eichleay were both wholly owned subsidiaries of Eichleay Holdings, Inc. There was evidence that ECI and Eichleay shared office space and clerical staff. High ranking corporate officers were transferred between Eichleay and ECI. The companies shared common services for estimating, sales, accounting, data processing, check writing, invoice processing and payment, and computer services. Eichleay set up and guaranteed a line of credit for ECI, and loaned ECI cash without a written agreement or set date for repayment. Eichleay guaranteed ECI's portion of the Pitcal job. There was evidence that ECI and Eichleay were both controlled by Geoff Eichleay, and that Geoff Eichleay made the major decisions for both companies, including the decision that Eichleay should drop out and ECI should bid on the Pitcal job.
 
 
 57
 The finding of the NLRB that Eichleay and ECI were a single employer further supports the arbitration panel's determination of an alter ego relationship between the two companies. The elements for a finding of single employer status are closely analogous to the elements for a finding of alter ego status. See Al Bryant, supra. The additional finding required for alter ego status, that the second company be formed to avoid the responsibilities of the first company's collective bargaining agreement, is also supported in this case. At the hearing on the temporary restraining order on July 22, 1987, John Nunez, Eichleay's then president, admitted that ECI was formed to avoid Eichleay's collective bargaining agreements.[13]
 
 
 58
 Because the contractual damages portion of the arbitration award does not directly conflict with the NLRB unit clarification decision, and because the finding that ECI and Eichleay were alter egos is not irrational, the district court erred by vacating that portion of the award. Thus we will reverse the district court in part and remand with instructions that that portion of the award be confirmed.[14]
 
 B. The IBEW Appeal
 
 59
 The IBEW appeal presents special problems. Quite simply, the district court may not sua sponte raise a motion to vacate when a party has failed to file a timely petition. The failure to raise objections within the limitations period "which could have been raised in a motion to vacate, modify, or correct the award bars raising them in confirmation proceedings held thereafter." Service Employees Int'l Union, Local 36 v. Office Center Serv., Inc., 670 F.2d 404, 412 (3d Cir.1982). Eichleay argues, nonetheless, that the Pennsylvania statute of limitations was not the proper statute of limitations, and that, even if it were, the district court properly vacated the awards.
 
 
 60
 We turn first to the question of the proper statute of limitations. Eichleay contends that the limitations period in either the Federal Arbitration Act or the California Code should have been applied to its petition to vacate. Since section 301 of the National Labor Relations Act, 29 U.S.C. § 185, does not contain a statute of limitations, we look to state law to supply the most analogous statute of limitations. Service Employees Int'l Union, Local No. 36, AFL-CIO v. Office Center Services, Inc., 670 F.2d 404, 409 (3d Cir.1982).
 
 
 61
 In Service Employees we held that "actions to vacate or confirm an arbitration award under section 301 should be governed by the relevant state statute of limitations." 670 F.2d at 409. Service Employees considered the applicability of the Federal Arbitration Act's statute of limitations to section 301 actions, and rejected it in favor of state law. 670 F.2d at 406-08 n. 6. Eichleay suggests that this panel need not be bound by our prior, directly on point decision, because the Supreme Court in DelCostello v. Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), held that federal concerns for uniformity overrode the presumption that state law applies to employees' "hybrid" actions alleging both breach of the collective bargaining agreement and breach of the duty of fair representation under section 301.
 
 
 62
 We do not believe that DelCostello requires us to disregard our prior decision in Service Employees. Although we noted in Federation of Westinghouse Independent Salaried Unions v. Westinghouse Elec. Corp., 736 F.2d 896, 901 (3d Cir.1984), that DelCostello, particularly in footnote 12, suggests that the applicability of state statutes of limitation to pure section 301 actions was now "an open question," we believe that Service Employees is still good law.[15]
 
 
 63
 The Seventh Circuit Court of Appeals confronted the effect of DelCostello on the statute of limitations for an action to vacate or confirm an arbitration award in Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc., 778 F.2d 1266 (7th Cir.1985). The court had previously held, in Teamsters Local 135 v. Jefferson Trucking Co., 628 F.2d 1023 (7th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), that it would look to state law for an appropriate statute of limitations in a section 301 action to vacate an arbitration award. In Domas Mechanical, the employer argued that DelCostello, not Jefferson Trucking should control the choice of limitations period.
 
 
 64
 In concluding that DelCostello should not control, the court noted that two concerns were central to the Supreme Court's decision in that case. First, there was a federal statute of limitations that provided a closer analogy than state statutes of limitation; and second, federal policies and the realities of litigation favored the federal statute of limitations. The court in Domas Mechanical concluded that neither of those concerns was present when a union or an employer sought to vacate or enforce an arbitration award. Domas Mechanical, 778 F.2d at 1268-70.
 
 
 65
 We agree with the reasoning in Domas Mechanical. Pennsylvania[16] provides a statute of limitations that is precisely directed to vacating arbitration awards, unlike the situation in DelCostello, where there was no close analogy in state law for hybrid actions. Similarly, the practical concerns of the DelCostello Court, that unsophisticated employees would need more time than provided by state law to determine if the union has breached its duty of fair representation, is not present in this case. Both labor unions and union employers are sufficiently sophisticated in the mechanics of arbitration and litigation to know that arbitration awards must be promptly enforced or vacated. Furthermore, the federal interest in swift resolution of arbitrated disputes would be served by the short limitations period provided under Pennsylvania law. We conclude that the rule announced in Service Employees, that state statutes of limitations apply to petitions under section 301 to confirm or vacate arbitration awards, remains the law of this circuit. Accord Posadas de Puerto Rico Assoc. v. Asociacion de Empleados, 873 F.2d 479 (1st Cir.1989) (applying 30 day Puerto Rican statute of limitations over Federal Arbitration Act's 90 day limitations period); Harry Hoffman Printing v. Graphic Communications, Int'l Union, Local 261, 912 F.2d 608, 612-13 (2d Cir.1990) (applying New York law instead of Federal Arbitration Act, and gathering similar cases); Champion Int'l Corp. v. United Paperworkers Int'l Union, 779 F.2d 328, 332 (6th Cir.1985). But see American Postal Workers Union v. United States Postal Serv., 823 F.2d 466 (11th Cir.1987) (applying limitations period of Federal Arbitration Act over Florida statute of limitations).
 
 
 66
 Having determined that we should look to state law for the appropriate statute of limitations, we turn next to Eichleay's contention that California law, rather than Pennsylvania law, should control.[17] Eichleay acknowledges that, generally, the law of the forum state should control. See Champion Int'l Corp., 779 F.2d at 334; c.f. Consolidated Express, Inc. v. New York Shipping Assoc., 602 F.2d 494, 507-08 (3d Cir.1979), vacated on other grounds, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980), on remand, 641 F.2d 90 (1981) (holding that limitations period of forum state should control in actions brought under section 303(b) of the National Labor Relations Act). Eichleay argues that an exception to the general rule should be recognized in this case, since application of Pennsylvania, rather than California, law will work an extreme hardship on it and seriously frustrate federal labor policies.
 
 
 67
 We can certainly see why Eichleay argues that an extreme hardship will be imposed on it by application of Pennsylvania law. But this hardship is no different than that imposed on any party who fails to preserve its rights by timely action. As for frustrating federal labor policies, Eichleay's argument here is simply that its petition was meritorious, and should be heard regardless of the limitations period. We do not believe that enforcement of this arbitration award will so frustrate labor policies that an exception to the general rule should be allowed.[18] The district court properly applied the Pennsylvania statute of limitations.[19]
 
 
 68
 Having properly applied this statute of limitations, however, and dismissed the petition to vacate and stricken Eichleay's affirmative defenses, see Service Employees, 670 F.2d at 412, the district court then sua sponte raised its own petition to vacate. This the district court could not do.[20]
 
 
 69
 The Pennsylvania statute of limitations on vacating arbitration awards states that if an application to vacate is denied "the Court shall confirm the award." 42 Pa.Con.Stat.Ann. § 7314(d) (emphasis supplied). Pennsylvania cases hold that the time limitations on contesting awards are jurisdictional and go to the court's competence. See e.g. Maxton v. Philadelphia Housing Auth., 308 Pa.Super. 444, 454 A.2d 618 (1982). Maxton does recognize an exception to this rule in extraordinary circumstances, such as fraud or "some breakdown in the court's operation." Id. 454 A.2d at 620. There is no allegation of fraud in this case, and the facts do not establish an extraordinary exception, thus the court was bound to confirm the award. We will reverse and remand with instructions that the district court confirm IBEW's award.
 
 IV.
 
 70
 For the foregoing reasons, we will affirm that portion of the district court orders which vacated the representational relief awarded in the Ironworkers' and Sheet Metal Workers' cases. We will, however, reverse that portion of the district court orders which refused to enforce the contractual relief awarded to these unions, and remand with instructions that the district court enforce that part of the award. We will reverse the district court order in the IBEW case, and remand with instructions that the district court enforce the award. We will also reverse the district court order dismissing the trust fund cases and remand for further proceedings. Each side to bear its own costs.
 
 
 
 *
 Honorable Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 There are a total of nine international unions and their related locals in these consolidated appeals. International Association of Bridge, Structural and Ornamental Iron Workers; United Brotherhood of Carpenters and Joiners of America; Laborers' International Union of North America; Operative Plasters' and Cement Masons' International Association of the United States and Canada; International Union of Operating Engineers; and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers; are parties to the Ironworkers appeal, No. 90-3637. Sheet Metal Workers' International Association is the party in the Sheet Metal Workers appeal, No. 90-3692. International Brotherhood of Electrical Workers, AFL-CIO; and United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO are parties to the IBEW appeal, No. 90-3693
 
 
 [2]
 Eichleay argues that this finding disregarded NMAPC's procedures which require specific, separate agreements between each international union and an employer before NMAs can be extended
 
 
 [3]
 Eichleay contends that IBEW was not a signatory to the NMAs. The IBEW acknowledges that it did not sign an NMA with Eichleay, but argues that it was invited to participate on the Pitcal job. Because of our disposition of the IBEW appeal, we need not resolve this dispute
 
 
 [4]
 This article provides:
 The arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this Agreement.
 
 
 [5]
 The district court later granted Eichleay's petitions to vacate in the Sheet Metal Workers and IBEW cases; remanding for the same reasons as stated in the Ironworkers case. In the IBEW case, the district court recognized that it could not vacate, since Eichleay's cross-petition was not timely. Nonetheless, the court concluded that it would be unfair and inconsistent to confirm this award. Consequently, the district court sua sponte raised a petition to vacate, granted it, and remanded the case to the arbitration panel for the same reasons stated in the Ironworkers case
 
 
 [6]
 In these cases the Unions sought contributions to their pension, vacation, health and welfare, and apprenticeship training and journeymen retraining trust funds. The Unions initially sought relief under RICO, in addition to contributions to the various benefit funds. The district court granted Eichleay's motion to dismiss the RICO claim and no appeal was taken from that dismissal
 
 
 [7]
 The decision of a joint labor-management grievance committee such as NMAPC is entitled to the same deference due the decision of an arbitrator. Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66, 74 (3d Cir.1985)
 
 
 [8]
 Eichleay's contention that the awards must be vacated in their entirety on public policy grounds is simply wrong. The awards need only be vacated to the extent they directly conflict with the NLRB's unit clarification decision
 
 
 [9]
 Both below and in their opening brief, see Unions' Brief at p. 17, the Unions conceded that at least part of the arbitration award, that portion granting back pay and benefits to workers at the Pitcal site, may not stand in the face of the NLRB's decision. In their reply brief, the Unions attempt to argue that they did not concede this issue. In light of the statements in the district court opinion and the Unions' opening brief, we conclude that the issue was conceded. Even if it were not conceded, this partial vacation of the awards is required by our discussion of Building Materials and Construction Teamsters Union v. Granite Rock Co., 851 F.2d 1190 (9th Cir.), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988)
 
 
 [10]
 The district court initially held that the issue was arbitrable, and thus denied Eichleay's request for a temporary restraining order. After the Unions filed their petitions for confirmation, however, the district court reconsidered its earlier decision and determined that alter ego status was an issue excluded from the arbitration clause
 
 
 [11]
 The panel's finding that Eichleay was "present" on the job can only mean that the panel found an alter ego relationship between ECI and Eichleay
 
 
 [12]
 This case can be distinguished from Laborers' Int'l Union of North Am. v. Foster Wheeler Corp., 868 F.2d 573 (3d Cir.1989). In that case, we considered whether the district court had correctly delegated to an arbitrator the determination whether the nonsignatory parent corporation of a double-breasted contractor was bound by the national labor agreement entered into by its nonunionized subsidiary. We held that a nonsignatory cannot be bound to a collective bargaining agreement under an alter ego theory unless the district court has, as a condition precedent, made the alter ego determination
 Although Laborers' International might be read broadly to require that the district court make any alter ego determination pertaining to the scope of a collective bargaining agreement, we think that the case is directed to situations in which a union seeks to bind a non-signatory to a collective bargaining agreement on the basis that the nonsignatory is the alter ego of a signatory. We therefore do not think that Laborers' International applies to prohibit arbitration of alter ego issues in cases, such as this one, in which a union alleges that a signatory to a collective bargaining agreement breached that agreement by setting up a nonunionized sister corporation to avoid collective bargaining responsibility.
 At all events, it is clear in this case that Eichleay, a signatory to the NMAs, was responsible for establishing its nonunionized sister corporation--the action for which the unions seek damages. Moreover, even assuming arguendo that the district court was correct in concluding that the alter ego issues were not arbitrable, the record is so clear on the issue that we are inclined to the view that the court clearly erred by finding that Eichleay and ECI were not alter egos at the time ECI entered into the joint venture on the Pit-Cal project. See, infra at p. 1059.
 
 
 [13]
 The testimony of Nunez was particularly unequivocal on this point:
 Q. It [ECI] was created so you [Eichleay] could avoid your collective bargaining agreement and operate non-union?
 A. That's correct. So we wouldn't lose our place in the marketplace in certain areas, or ECI wouldn't.
 
 
 [14]
 Similarly, we conclude that the district court erred by holding that the arbitration panel denied Eichleay due process. Eichleay objected to both the voting procedures used by NMAPC and to its exclusion from the second NMAPC hearing
 The NMAPC is composed of an equal number of union representatives and management representatives. A party may not vote on its own grievance. In this case, unions with related grievances were allowed to vote on other unions' grievances (i.e. the Ironworkers were allowed to vote on the Sheet Metal Workers grievance). Aside from the fact that Eichleay agreed to these procedures when it signed the NMAs, all the grievances were sustained in this case by unanimous votes. Thus Eichleay cannot show that the outcome would have been any different even if all the unions been barred from voting.
 Although Eichleay was not permitted to physically argue at the second hearing, Eichleay was permitted to submit an extensive position paper, which outlined its arguments. No new evidence was taken at this hearing, and the Unions relied on the same position papers they had submitted at the first hearing. If Eichleay wished to actually physically have its representatives argue against the Unions' representatives, it could have done so at the first hearing. Eichleay chose not to participate in the first hearing. That strategic choice by Eichleay does not give rise to a denial of due process. Since Eichleay chose not to participate in the first hearing, and was given an opportunity to submit its position to the arbitration panel at the second hearing, it was not denied due process.
 
 
 [15]
 In Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the Supreme Court expressly noted that Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (holding that state law supplied the statute of limitations in a section 301 suit by a union against an employer for breach of a collective bargaining agreement) was not overruled by DelCostello. Reed, 109 S.Ct. at 628 n. 5. In light of the fact that Hoosier Cardinal was central to our decision in Service Employees, we believe Reed further supports our conclusion that Service Employees is still binding in this circuit
 
 
 [16]
 Eichleay refers only to Pennsylvania law for purposes of its argument that a federal statute of limitation should apply. Since the California statute of limitations for vacating arbitration awards is 100 days, there is little difference between that statute and the Federal Arbitration Act's 90 day limit
 
 
 [17]
 Eichleay argues that California's statute of limitations for vacating arbitration awards, Cal.Civ.Proc.Code § 1288, which allows a petition to be filed within 100 days, should be applied. The Pennsylvania statute of limitations for vacating arbitration awards sets a limit of 30 days. 42 Pa.Con.Stat.Ann. § 7314(b). It is undisputed that Eichleay's cross-petition to vacate was filed 77 days after Eichleay received notice of the award
 
 
 [18]
 We note that Eichleay's insistence that its petition to vacate is meritorious is less than persuasive in light of our disposition of the Ironworkers' appeal. Although we are affirming the district court's order vacating the representational portion of that award, we would not necessarily be required to do so in this appeal since the IBEW was not named as a party to the unit clarification proceeding. Eichleay claims that it never entered into an NMA with the IBEW. Issues of contract formation may be submitted to an arbitrator, and there was some evidence of an oral agreement between the parties. It is not obvious that the arbitration panel's award frustrates federal labor policy
 
 
 [19]
 Eichleay also argues that, even if Pennsylvania law applies, it filed a timely petition to vacate in the Ironworkers and Sheet Metal Workers appeals, and that it meant these petitions to encompass the IBEW award. This argument has no merit. The awards named different parties and the IBEW appeal involved some different issues than the other appeals. Eichleay cannot presume that the court and the Unions "knew" that it meant to contest all of the awards
 
 
 [20]
 Even if this sua sponte action was proper, the district court's petition, like Eichleay's, would be untimely