INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS LOCAL UNION 42, Plaintiff,

v.

ABSOLUTE ENVIRONMENTAL SERVICES, INC. and Joseph E. Donohoe, individually, Defendants.

Civ. A. No. 91–716–JLL.

United States District Court, D. Delaware.

Jan. 29, 1993.

Francis Trzuskowski of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, DE, and Adam H. Feinstein and Bernard N. Katz of Meranze and Katz, Philadelphia, PA, of counsel, for plaintiff.

Richard L. Abbott of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, DE, for defendants.

## OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

Plaintiff International Association Of Heat And Frost Insulators And Asbestos Workers Local Union No. 42 ("Local 42" or "plaintiff") and defendants Absolute Environmental Services, Inc. ("AESI") and Joseph G. Donohoe have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 23, 1991, Local 42 commenced this action against defendants seeking, *inter alia*, to enforce an arbitration award obtained against the defendants under the grievance procedure set forth in the collective bargaining agreement executed between AESI and Local 42.[1] Complaint, Docket Item ("D.I.") 1. Specifically, Local 42 asserts two counts in its complaint.

In Count I, Local 42 alleges that defendants AESI and Donohoe refused to comply with the arbitration award entered against them for breach of the collective bargaining agreement. *Id.* at pp. 5–6. Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a)[2], confers upon the district courts original jurisdiction in cases involving alleged violations of contracts between an employer and a labor organization. *See Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 697, 86 S.Ct. 1107, 1109, 16 L.Ed.2d 192 (1966) ("Section 301 of the Labor Management Relations Act, 1947, confers jurisdiction upon the federal district courts over suits upon collective bargaining agreements.") Accordingly, the Court possesses subject matter jurisdiction based on a federal statute with respect to Count I of Local 42's complaint.

In Count II, Local 42 asserts a supplemental state law claim for tortious interference with the collective bargaining agreement against defendant Donohoe individually. *Id.* at pp. 7–8. As to Count II, this Court's jurisdiction is founded on the Judicial

---

1. The collective bargaining agreement provides that "[t]rade disputes or grievances shall be settled without cessation of work by a Joint Trade Board consisting of three Employers and three Local Union members, or an equal number of representatives thereof." Collective Bargaining Agreement Between Local 42 and AESI, (hereinafter referred to as "Collective Bargaining Agreement"), Docket Item ("D.I.") 31, pp. 1–27, at p. 24.

2. Section 301 of the Labor Management Relations Act of 1947 provides, in pertinent part:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties ...
   (c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members. 29 U.S.C. § 185(a) & (c). Moreover, 28 U.S.C. § 1331 grants the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff Local 42 is a labor organization within the meaning of § 301 of the Labor Management Relations Act and its principal office is located at 1188 River Road, New Castle, Delaware. Defendant AESI is an employer within the meaning of § 301 and is a Delaware corporation with its principal place of business in Wilmington, Delaware. Defendant Donohoe is the incorporator, president, secretary, and treasurer of AESI. Accordingly, this Court's jurisdiction over the parties and venue in this forum are appropriate under § 301.

Improvements Act of 1990 which is codified at 28 U.S.C. § 1367. Section 1367(a) provides, *inter alia*, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).[3] Because the state claim in Count II forms part of the same case or controversy as the federal statutory claim in Count I, the Court finds that supplemental jurisdiction over the state law claim in Count II is appropriate.

## II. FACTS

The facts of the present case have been unnecessarily complicated by the failure of the parties to accurately memorialize the collective bargaining agreement that forms the crux of this litigation. It is undisputed, and the Court so finds, that on October 3, 1990, defendant AESI, through its agent, defendant Donohoe, executed a collective bargaining agreement and an asbestos removal addendum with plaintiff Local 42. Standing alone, however, the four corners of the written agreement contain an inherent inconsistency.

■ The first sentence of the collective bargaining agreement states that "[t]his Agreement is entered into this 14 day [sic] of July 1989, by and between Absolute Environmental Services, Inc. (hereinafter referred to as the Employer) and Local 42 ..." Collective Bargaining Agreement, D.I. 31, at p. 1. However, AESI was not incorporated until October 2, 1990, well over a year after the date set forth in the opening sentence of the agreement. *See* Affidavit of Joseph G. Donohoe, D.I. 20 at Exhibit ("Ex.") D. To further confuse the matter, the text of the agreement designates AESI as the employer bound thereby, yet, the agreement is signed by defendant Donohoe along with the handwritten date "10/3/90" scribbled beneath his signature. Nowhere on the signature page is there any indication of whether Donohoe signed the agreement as a representative on behalf of AESI or whether Donohoe signed the agreement in his individual capacity.

Faced with this incoherent document, the Court questioned counsel repeatedly during oral argument concerning the collective bargaining agreement. Counsel offered no satisfactory explanation for the inconsistencies which riddle the document. Indeed, in their briefs submitted to this Court, both counsel for Local 42 and counsel for AESI and Donohoe proceeded on the assumption that defendant Donohoe signed the collective bargaining agreement on October 3, 1990, on behalf of AESI, acting in his representative capacity as an agent for AESI. Because the parties did not contest this fact, and because there is ample support in the record before the Court that Donohoe signed the agreement in his representative capacity, the Court finds as a matter of law that on October 3, 1990, the collective bargaining agreement and asbestos

---

**3.** Section 1367(a) overrules the Supreme Court's decisions in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1990) and *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). In these two decisions, the Supreme Court held that in cases where the district courts possess original subject matter jurisdiction under a federal statute, the district courts do not possess subject matter jurisdiction over pendent claims brought by the plaintiff against additional non-diverse defendants unless there exists a separate jurisdictional basis for those claims. Simply stated, *Finley* and *Aldinger* rejected the doctrine of pendent party jurisdiction that had developed in the wake of the Supreme Courts decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As the legislative history of § 1367(a) makes clear, § 1367(a) "generally authorizes the district court to exercise jurisdiction over a supplemental claim whenever it forms part of the same constitutional case or controversy as the claim or claims that provide the basis of the district court's original jurisdiction ... In so doing, subsection (a) codifies the scope of supplemental jurisdiction first articulated by the Supreme Court in *United Mine Workers v. Gibbs*." H.R.REP. No. 101–734, 101st Cong. 2nd Sess., at 28–29 (1990) *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6874–75; *See also* David D. Siegel, *Practice Commentary*, appended to 28 U.S.C.A. § 1367; *Growth Horizons, Inc., v. Delaware County*, No. 92–1195 (3d Cir. filed January 21, 1993). Under the rule enunciated in *Gibbs*, the district courts possess jurisdiction over pendent state claims when the federal and state claims are derived "from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

removal addendum were entered into between AESI and Local 42.[4]

The collective bargaining agreement and asbestos removal addendum mandate that AESI must employ Local 42 labor secured through the Local 42 hiring hall to perform all asbestos removal and heat and frost insulation work obtained by AESI within Local 42's territorial jurisdiction.[5] Collective Bargaining Agreement and Asbestos Removal Addendum, D.I. 31 at pp. 4, 17–18, 29–30. It is alleged that sometime in March 1991, AESI violated the exclusive hiring hall provisions of the collective bargaining agreement and asbestos removal addendum. Thereafter, Local 42 initiated formal grievance proceedings against AESI and Donohoe. Local 42 business manager Curtis Harris sent written notice to AESI and Donohoe informing them that, consistent with the grievance procedures of the collective bargaining agreement, Local 42 was referring the matter to the Joint Trade Board for arbitration and that a hearing on the matter was scheduled for June 28, 1991. See Undated Letter from Curtis Harris to Joseph Donohoe, D.I. 31, at pp. 108–109. It is undisputed that Donohoe received notice of the Joint Trade Board proceeding because his attorney, Richard Abbott, Esq., obtained a continuance of the proceeding and had it rescheduled to July 8, 1991. See June 26, 1991 Letter from Richard Abbot to Joseph Donohoe, D.I. 31 at p. 110. Despite the continuance, neither Donohoe nor any representative of AESI attended the July 8th hearing. See Minutes of the Joint Trade Board Proceeding, D.I. 31, pp. 111–115, at p. 111.

The Joint Trade Board hearing proceeded as scheduled, ex parte, and at the conclusion of the hearing the Joint Trade Board adjudged Donohoe and AESI to be in violation of the exclusive hiring hall provisions of the collective bargaining agreement and the asbestos removal addendum. As a remedy, the Joint Trade Board imposed an assessment of $1,923.60 jointly against AESI and Donohoe to be paid directly to Local 42. In addition, the Joint Trade Board ordered AESI and Donohoe to permit Local 42 to inspect their records to determine the extent of any further violations of the hiring hall provisions. Id. at 113–114. In pertinent part, the minutes of the Joint Trade Board proceeding state the substance of the Joint Trade Board's decision thusly:

3. A minimum of 70 hours in lost wages are due to be distributed to persons designated as those who would have been given employment and contributions on their behalf must be made to the fund accordingly. Absolute Environmental Services, Inc. and Donohoe are individually and jointly ordered to pay forthwith a sum in the amount of $1,923.60. Such sum to be paid directly to Local # 42 which organization will then have the responsibility of distributing contributions to the appropriate funds, and wages to the persons on the

---

4. The additional support for this finding is supplied by the testimony of defendant Donohoe and the testimony of Curtis Harris, the business manager of Local 42 who negotiated and signed the collective bargaining agreement on behalf of Local 42. In his affidavit, Donohoe testified that the "[a]t all times since October 2, 1990, I acted in my capacity as incorporator, Secretary/Treasurer, President or employee of Absolute Environmental Service, Inc. in relation to the operation of the corporation's business and in regard to any dealings with the International Association of Heat and Frost Insulators and Asbestos Workers' Local Union 42." Affidavit of Joseph E. Donohoe, D.I. 20 at Ex.D. Curtis Harris testified in his affidavit to the following:

3. In [sic] or about September of 1990, I spoke with Defendant, Joseph E. Donohoe (hereinafter "Donohoe") with regard to Donohoe's creation of Defendant Absolute Environmental Services, Inc.

4. During the course of my conversation with Defendant Donohoe, he indicated that he would like to utilize Local 42 members to perform asbestos removal work on behalf of the newly formed company. I advised Donohoe that he must first enter into a collective bargaining relationship with the union and sign a union contract in order to employ members of Local 42. Donohoe agreed to sign a contract with Local 42 and *on October 3, 1990, Local 42 and Absolute executed a collective bargaining agreement.*

Affidavit of Curtis Harris, D.I. 31, pp. 117–122, at p. 118 (emphasis added).

5. Article V of the collective bargaining agreement defines the territorial jurisdiction of the agreement as embracing the State of Delaware and Salem County, New Jersey. Collective Bargaining Agreement, D.I. 31 at p. 4.

hiring hall list who should have been referred.

4. Donohoe and Absolute Environmental Services, Inc. are to immediately permit an auditor, accountant or other representative designated by Local #42, access to the company books and payroll records in order to determine whether there are additional hours for which job wages and fringe benefits contributions must be made because of the violations of the Union Contract.

*Id.* at 113–14.

Curtis Harris then notified defendants AESI and Donohoe of the Joint Trade Board decision by letter. *See* D.I. 31, at p. 116. Defendants have refused to comply with the decision. Thus, Local 42 brought this lawsuit against defendants seeking, *inter alia*, enforcement of the Joint Trade Board decision.

## III. DISCUSSION

### A. CHOICE OF LAW

#### 1. COUNT I: THE § 301 CLAIM

Claims for violations of a collective bargaining agreement brought under § 301 of the Labor Management Relations Act of 1947, such as that contained in Count I of Local 42's complaint, are governed by federal law. *Steelworkers v. Rawson*, 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Under federal law, the scope of a district court's review of an arbitration award entered under the terms of a collective bargaining agreement is exceedingly narrow.[6] *Eichleay Corp. v. International Ass'n of Iron Workers*, 944 F.2d 1047, 1056 (3d Cir.1991); *Roberts & Schaefer Co. v. Local 1846, United Mine Workers of America*, 812 F.2d 883, 885 (3d Cir.1987). It is not the province of the district court to take issue with the arbitrator's findings of fact and interpretations of the contract. The district court must affirm the arbitrator's award so long as it "draws its essence from the collective bargaining agreement." An arbitrator's award draws its essence from the collective bargaining agreement "if the interpretation can *in any rational way* be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention ..." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969) (emphasis added); *see also Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America*, 896 F.2d 745, 748 (3d Cir.1990).

Yet, a district court's review of an arbitration award is not merely a perfunctory exercise which always results in the affirmation of the arbitration award below. The duty to submit to arbitration is of contractual origin and exists by virtue of a litigant's consent to arbitration by his entering into a collective bargaining agreement which contains an arbitration clause. When a litigant is not a party to the collective bargaining agreement, the litigant is under no duty to submit to arbitration. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). It is the province of the district courts to determine as a threshold matter whether a party has a contractual duty to submit to arbitration. *Id.* If a litigant has no contractual duty to submit to arbitration, then that litigant is not bound by an arbitration award entered against him. Thus, if an arbitration award purports to bind a litigant who is not a party to the collective bargaining agreement, the district court must vacate the arbitration award as to that litigant for want of jurisdiction.

An arbitration award must also be vacated when the arbitrator passes upon

---

**6.** An arbitration award issued by a joint labor-management grievance committee, such as that issued by the Joint Trade Board in the present case, is entitled to the same deferential judicial review as an arbitration award issued by a sole arbitrator. *Eichleay Corp. v. International Ass'n of Iron Workers*, 944 F.2d 1047, 1056 n. 7 (3d

questions of state or federal law.[7] The arbitrator is merely the "proctor of the bargain" and as such his authority is confined to interpreting and applying the terms of the collective bargaining agreement against the parties. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52–53, 94 S.Ct. 1011, 1021–1022, 39 L.Ed.2d 147 (1974). The arbitrator is not free to dispense his own brand of industrial justice, *Tanoma Mining Co.,* 896 F.2d at 748, nor is the arbitrator free to resolve questions of federal or state law. *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 744–45 & n. 23, 101 S.Ct. 1437, 1446–47 & n. 23, 67 L.Ed.2d 641 (1981); *see also Gardner–Denver Co.,* 415 U.S. at 52–53, 94 S.Ct. at 1021–1022; *International Brotherhood of Electrical Workers, Local Union No. 323 v. Coral Electric Corp.,* 576 F.Supp. 1128, 1137–38 (S.D.Fla.1983). One noted commentator aptly described the role of the arbitrator thusly:

> A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general character to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. He serves their pleasure only, to administer the rule of law established by their collective agreement.

Shulman, *Reason, Contract, and Law in Labor Relations,* 68 Harv.L.Rev. 999, 1016 (1955) *cited in Gardner–Denver Co.,* 415 U.S. at 52–53 n. 16, 94 S.Ct. at 1021–1022 n. 16. It is with these rules of federal labor law that the Court will consider Local 42's claim that defendants violated § 301 in their failure to comply with the arbitration award issued by the Joint Trade Board.

**2. COUNT II: THE CLAIM FOR TORTIOUS INTERFERENCE WITH THE COLLECTIVE BARGAINING AGREEMENT AGAINST DEFENDANT DONOHOE**

Although federal law governs actions seeking enforcement of a collective bargaining agreement under § 301 of the Labor Management Relations Act, state-law causes of action which involve the rights and obligations independent of the collective bargaining agreement are not preempted by federal law. *Allis–Chalmers Corp.,* 471 U.S. at 210–13, 105 S.Ct. at 1910–12. Federal law only preempts state-law causes of action which are inextricably intertwined with consideration of the terms of the collective bargaining agreement. To allow state courts to consider such causes of action would require the state courts to interpret and apply the terms of the collective bargaining agreement, and thus encroach upon federal labor law. *Id.* Accordingly, "any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301." *Steelworkers v. Rawson,* 495 U.S. at 368, 110 S.Ct. at 1909. Similarly, state-law causes of action sounding in tort are preempted by § 301 if the duty imposed by the state law "is created by a collective-bargaining agreement and without existence independent of the agreement" since in those cases state courts would be required to interpret and apply the terms of the collective-bargaining agreement. *Id.* at 369, 110 S.Ct. at 1909; *see also Allis–Chalmers Corp.,* 471 U.S. at 215–16, 105 S.Ct. at 1913–14. Local 42's state-law cause of action against defendants for tortious interference of contract is not preempted by § 301. As the following discussion makes clear, the tort of interference with contract does not require interpretation of the collective bargaining agreement under state law.[8]

Cir.1991) *citing Griesmann v. Chemical Leaman Tank Lines, Inc.,* 776 F.2d 66, 74 (3d Cir.1985).

7. The Court recognizes that the two grounds for vacating an arbitration award set forth in the text are not exhaustive. Arbitration awards may be set aside for other reasons including, arbitrator bias, being contrary to public policy, and being in violation of law. *Griesmann,* 776 F.2d at 74 n. 13.

8. It should be noted that in their briefs submitted to this Court, the parties have assumed that Delaware law governs Local 42's claim for tortious interference with contract. Because the application of Delaware law to this case does not offend the State of Delaware's choice of law rules and because all parties agree that Delaware law governs this case, the Court will apply Delaware law to Local 42's claim for tortious interference with

The State of Delaware has adopted the definition of tortious interference with contract set forth in the *Restatement (Second) of Torts* § 766. *Irwin & Leighton v. W.M. Anderson Co.,* 532 A.2d 983, 992 (Del.Ch. 1987); *Bobson v. Gulfstream Marketing Ltd.,* 1992 WL 68913, at p. *3, 1992 Del.Super.LEXIS 129, at p. 9 (Del.Super.Ct. March 27, 1992); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 576 F.Supp. 922, 929 (D.Del.1983) *aff'd* 769 F.2d 152 (3d Cir.1985). Section 766 reads:

§ 766. Intentional Interference with Performance of Contract by Third Person

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766. As the text of the section makes clear, the tort of interference with contract imposes liability upon one who intentionally interferes with the contract of others. In the present case, the issue arises as to whether or not an officer or director of a corporation, such as defendant Donohoe, may be held personally liable for tortious interference with contract by causing his company to breach a contract. Neither the parties, nor the Court, has been able to discover any Delaware law addressing this issue. Thus, the Court must predict how the Delaware Supreme Court would resolve this issue.

 However, since the Delaware Courts have adopted § 766 of the Restatement (Second), this Court holds that Delaware would also adopt the other relevant sections of the Restatement (Second) concerning the tort of intentional interference with contract. Among these sections, is § 770 which states:

§ 770 Actor Responsible for Welfare of Another

One who, charged with responsibility for the welfare of a third person, intentionally causes that person not to perform a contract or enter into a prospective contractu-

al relationship with another, does not interfere improperly with the other's relation if the actor:

(a) does not employ wrongful means and

(b) acts to protect the welfare of the third person.

*Restatement (Second) of Torts* § 770. Comment b thereto states that "[t]he rule stated is frequently applicable to those who stand in a fiduciary relation toward another, as in the case of agents acting for the protection of their principals, trustees for their beneficiaries or *corporate officers acting for the benefit of the corporation."* *Restatement (Second) of Torts* § 770 cmt. b. (emphasis added). The text of § 770 and the comments thereto make clear that an officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said officer or director exceeds the scope of his agency in so doing. *See Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 325–26 (9th Cir.1982) (applying § 770 in officer/director context under California law); *see also Brown Mackie College v. Graham,* 768 F.Supp. 1457, 1461 (D.Kan.1991) (applying § 770 in attorney/client context); *cf. Republic of Italy v. De Angelis,* 206 F.2d 121, 130–31 (2d Cir.1953) (Clark, J. concurring) (discussing tortious interference with contract under *Restatement (First) of Torts* §§ 766 *et seq.*).

The Court predicts that the Delaware Supreme Court would adopt the rule set forth in § 770 which determines when an officer or director may be held personally liable for tortious interference with a contract between his corporation and another party. The rule in § 770 is consistent with Delaware's venerable business judgment rule which creates a presumption that officers and directors are immune from personal liability when making business decisions in their fiduciary capacity. *Aronson v. Lewis,* 473 A.2d 805, 812–13 (Del. 1984). Second, the rule in § 770 is consonant with the economic efficiency view of contract law that a party to a contract has the option of either honoring the contract or breaching it and paying money damages. Breaches of contract can be economically efficient and are part of the function of the marketplace. This

contract. *Cf. Neimann v. Rogers,* 802 F.Supp. 1154, 1156 n. 1 (D.Del.1992).

view of contract law was first endorsed in Delaware by Chancellor Josiah Wolcott in *Philadelphia Storage Battery Co. v. R.C.A.*, 194 A. 414, 429 (Del.Ch.1937) and has been followed by Delaware courts ever since.[9] In order to secure the practical application of the economic efficiency theory of contract law in the market, officers and directors of a corporation must be free to breach contracts without exposing themselves to personal liability, when, in their business judgment, such contracts are not economically beneficial to the corporation.

## B. STANDARD FOR GRANT OF SUMMARY JUDGMENT

█ Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for summary judgment. It provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The case at bar is before the Court on cross motions for summary judgment. With respect to the federal claim under § 301 of the Labor Management Relations Act asserted in Count I of Local 42's complaint, defendants AESI and Donohoe bear the burden of proving that the arbitration award should be vacated. *Mutual Fire, Marine & Inland v. Norad Reinsurance Co., Ltd.*, 868 F.2d 52, 57 (3d Cir.1989). With respect to the Delaware law claim for tortious interference with contract, plaintiff Local 42 bears the burden of proof.[10]

█ When the moving party seeks summary judgment based on a claim or defense upon which the moving party bears the ultimate burden of proof at trial, the moving party must establish every element of that claim or defense as a matter of law such that no reasonable jury could return a verdict for the nonmovant. By contrast, when the moving party seeks summary judgment based on a claim or defense upon which the nonmovant bears the ultimate burden of proof at trial, the moving party need only establish that there exists no genuine issue of material fact as to any essential element of the nonmovant's claim or defense. Any doubt with respect to the existence of a genuine issue of material fact will be resolved by the Court against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *J.F. Freeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990); *see also* 10A C. Wright, *et al., Federal Practice and Procedure* § 2727 (1983).

**9.** In *Philadelphia Storage Battery Co.*, Chancellor Wolcott wrote:

> It is a paradox, legally but not morally true, that a party to a contract has a right to break it. If he exercises this psuedo right—this option it might be better called—he does not destroy the contract. The law will require him to pay for his high-handed conduct or in proper case enjoin him from a continuance of his faithless behavior. No authority anywhere can be found for the doctrine, however, that one party to a contract can be said to control the other ... simply because of the damage he may do the other by the unlawful breach, actual or threatened, of the obligations that bind him.

*Philadelphia Storage Battery Co.*, 194 A. at 429.

**10.** Research has revealed no Delaware cases discussing which party bears the burden of proof in an action for tortious interference with contract. Comment k to *Restatement (Second) of Torts* § 767 states that tortious interference with contract is a newly emerging tort and as such "there is little consensus on who has the burden of raising the issue of whether the interference was improper or not and subsequently of proving that issue ..." *Restatement (Second) of Torts* § 767 cmt. k. This Court concludes that the burden of proof should be imposed on the plaintiff to establish all the necessary elements of the tort, including establishing that the alleged tortfeasor was not acting in a fiduciary capacity on behalf of the breaching party. This approach is consistent with Delaware's business judgment rule which establishes a presumption that an officer's or director's actions were performed on behalf of the corporation and will not be gainsaid by the judiciary unless evidence is proffered demonstrating a breach of fiduciary duty. *See Aronson v. Lewis*, 473 A.2d at 812 (Under the business judgment rule, "[t]he burden is on the party challenging the decision to establish facts rebutting the presumption.").

If the movant satisfies this burden, the burden then shifts to the nonmovant to proffer evidence. When the nonmovant does not bear the ultimate burden of proof at trial, the nonmovant may withstand summary judgment by coming forward with evidence sufficient to create a genuine issue of material fact as to any essential element of the movant's claim or defense. However, when the nonmovant does bear the ultimate burden of proof at trial, the nonmovant may withstand summary judgment only by coming forward with evidence sufficient to create a genuine issue of material fact as to every essential element of the nonmovant's claim or defense. Rule 56(c) provides that "[w]hen a motion for summary judgment is made and supported [by evidence] . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(c); *see also* Advisory Committee Notes to the 1963 Amendment of Rule 56, reported in 31 F.R.D. 648 (1963). An issue of material fact is established by the nonmovant only "if there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or it is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

## C. ANALYSIS

### 1. COUNT I: THE § 301 CLAIM

Defendants AESI and Donohoe contend that the arbitration award is null and void as a matter of law because it violates § 301 of the Labor Management Relations Act and the due process clause of the Fourteenth Amendment to the U.S. Constitution. Accordingly, defendants submit that they are entitled to summary judgment as to Count I of Local 42's complaint seeking enforcement of the arbitration award. Defendants' contention is based on their claim that they did not receive adequate notice of the July 8, 1991 Joint Trade Board hearing. Defendants argue that the Joint Trade Board addressed additional violations of the collective bargaining agreement of which they were not properly notified. In support of their contention, defendants have offered a copy of a letter, dated April 9, 1991, that they received from Local 42's counsel, the law firm of Meranze and Katz, which first apprised defendants that they were in violation of the hiring hall procedures of the collective bargaining agreement and asbestos removal addendum. That letter, specifically states that "[t]he union had advised us that during the week of March 18, 1991, bargaining and work was performed by employees who were obtained outside of the hiring hall procedure." April 9, 1991 Letter from Bernard N. Katz to Joseph Donohoe, D.I. 29 at p. A–28. Despite this express limitation to alleged violations during the week of March 18, 1991, defendants argue that the Joint Trade Board considered and found defendants liable for additional violations.

Defendants' contention that the arbitration award amounts to a denial of due process may be disposed of in short shrift. The Fourteenth Amendment states, in pertinent part, that:

> No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1 (emphasis added). As the text makes clear, the rights contained in the Fourteenth Amendment may only be asserted against the State. Thus, state action is a precondition to invoking the rights set forth in the privileges and immunities clause, the due process clause, and the equal protection clause. Defendants Donohoe and AESI overlook this axiom of constitutional law. Accordingly, the due process requirements of notice are inapplicable to the case at bar which involves the form of notice required for arbitration proceedings pursuant to a collective bargaining agree-

ment between private parties. *Joint Board of Cloak, Skirt & Dressmakers Union v. Senco, Inc.,* 289 F.Supp. 513, 518 (D.Mass. 1968).

■ Defendants' contention that the arbitration award violates § 301 is likewise without merit. It is a well-established rule of federal labor law that the resolution of procedural questions in a dispute subject to arbitration is the province of the arbitrator. *John Wiley & Sons v. Livingston,* 376 U.S. at 557, 84 S.Ct. at 918 ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *See also Senco,* 289 F.Supp. at 519. In the case at bar, the minutes of the arbitration proceeding reveal that the Joint Trade Board determined that the defendants Donohoe and AESI received adequate notice:

It was noted by the Board that due and adequate notice had been sent to Mr. Donohoe and his company concerning the hearing originally scheduled for June 28, 1991.

Thereafter, as a result of telephone calls and written communications from Absolute Environmental Services, Inc. [to] Council, [sic], Richard L. Abbot, [sic] [a] postponement of the proceedings earlier scheduled was granted to [sic] and Absolute Environmental Services, Inc. through its attorney, agreed [to] have the Board hear evidence July 8, 1991 and determine the issues of hiring-hall violations ...

... No further postponement was requested and due and adequate notice of the nature of the proceedings had earlier been given to Absolute Environmental Service, Inc.

Minutes of the Joint Trade Board Proceeding, D.I. 31 at pp. 111–112.

■ The Joint Trade Board's finding of adequate notice is entitled to deference from this Court and will not be disturbed unless defendants AESI and Donohoe proffer evidence demonstrating that the Joint Trade Board's finding fails to draw its essence from the collective bargaining agreement. Defendants have not come forward with any such

evidence. Accordingly, the Joint Trade Board's finding that defendants received adequate notice is affirmed.

■ Regrettably, that conclusion does not end the inquiry. The Joint Trade Board adjudged *both defendants Donohoe* and AESI to be in violation of the exclusive hiring hall provisions of the collective bargaining agreement and asbestos removal addendum and fashioned a remedy for Local 42 against defendants jointly. However, only defendant AESI was bound by the collective bargaining agreement and only AESI possessed a contractual duty to submit to arbitration thereunder. *See John Wiley & Sons v. Livingston,* 376 U.S. at 547, 84 S.Ct. at 913; *See also Laborer's International Union of North America v. Foster Wheeler Corp.,* 868 F.2d 573 (3d Cir.1989); *American Bell, Inc. v. Federation of Telephone Workers,* 736 F.2d 879 (3d Cir.1984). Defendant Donohoe had no such duty and, therefore, the Joint Trade Board had no authority over him. Accordingly, the Court holds that the arbitration award of the Joint Trade Board will be vacated with respect to its imposition of liability upon defendant Donohoe. However, the Joint Trade Board award will be affirmed as it pertains to defendant AESI.

Local 42 argues that the portion of the Joint Trade Board award finding defendant Donohoe jointly liable must be affirmed and enforced by this Court: (1) because defendant Donohoe is the alter ego of the defendant AESI due to his overwhelming control of AESI and his alleged failure to honor corporate formalities; and (2) because defendant Donohoe exceeded the scope of his authority as an agent for AESI in causing AESI to breach the collective bargaining agreement. This Court finds Local 42's argument untenable.

■ It is the province of the courts, not the arbitrator, to determine whether or not a party possesses a duty to submit to arbitration. The province of the courts extends to determinations that a duty to submit to arbitration exists based upon a finding of alter ego. *See Laborer's International Union of North America v. Foster Wheeler Corp.,* 868 F.2d at 576 ("*American Bell* recognizes, how-

**404**

ever, that it is the role of the district court, not the arbitrator, to pierce the corporate veil and require a parent corporation to participate in arbitration of a contract to which a subsidiary is formally a party."); *American Bell, Inc.*, 736 F.2d at 886.

■ The only case in which the Third Circuit has countenanced an arbitrator's finding of alter ego is *Eichleay Corp. v. International Ass'n of Iron Workers*, 944 F.2d at 1059 n. 12. There, the Third Circuit concluded that an arbitrator may make alter ego determinations "in cases ... in which a union alleges that a signatory to a collective bargaining agreement breached that agreement by setting up a nonunionized sister corporation to avoid collective bargaining responsibility." *Id.* Thus, *Eichleay* stands for the proposition that when an employer, who is a party to a collective bargaining agreement, funnels work to its subsidiary in an effort to avoid the employer's obligations under the collective bargaining agreement, an arbitrator has the power to find the employer, who is the party to the collective bargaining agreement, liable for breach thereof. The case at bar, however, does not present such a scenario. Here, the arbitrator imposed personal liability on Donohoe, who was not a party to the collective bargaining agreement, for violations of that agreement committed by AESI, a party to the agreement. Since Donohoe was not a party to the collective bargaining agreement, he was not bound thereby. In *Eichleay*, the arbitrator imposed liability upon a parent corporation, which was itself a party to the collective bargaining agreement at issue. Thus, *Eichleay* is inapposite to the case at bar.

■ Furthermore, the Joint Trade Board did not possess the authority to impose liability upon Donohoe based on an alter ego theory of piercing the corporate veil nor based on an agency law theory that Donohoe exceeded the scope of his authority. The Joint Trade Board lacked this authority because those inquiries involve questions of federal labor law and Delaware state law,

respectively, which the arbitrator may not consider. "Federal labor law governs liability for breach of a labor contract between a union and employer, including liability based on a theory of corporate veil piercing." *American Bell, Inc.* 736 F.2d at 886. Delaware state law governs the issue of whether an officer or director of the employer exceeded the scope of his agency and tortiously interfered with the collective bargaining agreement. Under the Supreme Court's decision in *Alexander v. Gardner-Denver Co.*, an arbitrator may not consider questions of federal or state law in rendering an award. The arbitrator may only interpret and apply the terms of the bargain he is called upon to enforce. *Alexander v. Gardner-Denver Co.*, 415 U.S. at 52–53, 94 S.Ct. at 1021–1022. Thus, the Joint Trade Board was without authority to impose personal liability upon defendant Donohoe.[11]

### 2. COUNT II: THE CLAIM FOR TORTIOUS INTERFERENCE WITH THE COLLECTIVE BARGAINING AGREEMENT AGAINST DEFENDANT DONOHOE

Defendant Donohoe contends that he is entitled to summary judgment with respect to Local 42's claim for tortious interference with the collective bargaining agreement. Defendant Donohoe argues that at all times relevant to this litigation, he was acting in his capacity as an agent, employee, and officer of AESI, and therefore he cannot be held liable for tortious interference with the collective bargaining agreement as a matter of law. In support of his contention, Donohoe offers his own affidavit. D.I. 20 at Ex. D.

Local 42 contends that its claim for tortious interference must survive Donohoe's motion because genuine issues of material fact remain as to whether Donohoe exceeded the scope of his agency in causing AESI to breach its contract with Local 42. Local 42 asserts that the Court must discredit Donohoe's "self-serving" affidavit and deny summary judgment "[b]ecause [d]efendants have

11. It should be noted that neither of the two theories advanced by Local 42 for imposing personal liability upon defendant Donohoe are even mentioned in the Joint Trade Board award. Pre-

cisely how the Joint Trade Board arrived at its finding of personal liability upon defendant Donohoe remains a mystery.

---

failed to meet their burden of showing an absence of material facts with regard to Donohoe's relationship with [p]laintiff." Plaintiff's Answering Brief, D.I. 33 at 16. Plaintiff's contention is without merit.

 Plaintiff Local 42 misconceives the rules for the imposition of summary judgment. As explained more fully in the preceding text, Local 42 bears the ultimate burden of proof in establishing that Donohoe acted beyond the scope of his agency. Where a party bears the ultimate burden of proof on an issue at trial, that party must proffer evidence from which a reasonable jury could find in its favor to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251, 106 S.Ct. at 2511 *quoting Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872). Even if the Court were to view defendant Donohoe's affidavit with a skeptical eye, plaintiff would still not have shouldered its burden of proof to withstand summary judgment. Plaintiff has proffered no evidence that Donohoe usurped a corporate opportunity or committed any other breach of his fiduciary duty in causing AESI to breach the Local 42 contract.[12]

For the reasons set forth above, summary judgment will be granted in favor of Local 42 with respect to Count I of its complaint enforcing the Joint Trade Board award only as it pertains to AESI. Summary judgment will be granted in favor of Defendant Donohoe with respect to Count I of Local 42's complaint and, therefore, the Joint Trade Board award will be vacated as it pertains to him. Summary judgment will also be granted in favor of defendant Donohoe with respect to Count II of Local 42's complaint for tortious interference with contract. Summary judgment will be entered forthwith in accordance with this opinion.

---

**12.** Local 42 also argues that Donohoe exceeded the scope of his agency authority in breaching the union contract because his actions exceeded his powers as set forth in AESI's certificate of incorporation. In support of its claim, Local 42 relies on a provision in the certificate which states that "no director shall have personal liability to the corporation or a stockholder [except] ... for facts [sic] and omissions not in good faith or which involve intentional misconduct or knowing violation of law ..." Plaintiff's Opening Brief, D.I. 30 at 25–26 *quoting* AESI Certificate of Incorporation, D.I. 32 at 239. Local 42's argument is absurd. As stated above, under De- laware law the business decisions of officers and directors are protected by the heavy presumption of the business judgment rule; this protection includes decisions to breach a contract. This rule is not jettisoned simply because plaintiff styles its cause of action as "tortious interference with contract". Local 42 has offered no evidence that Donohoe's actions constituted a breach of his fiduciary duty and thus, exceeded the scope of his agency authority. Without evidence that defendant Donohoe breached his fiduciary duty to AESI, this Court will not entertain Local 42's claim.