BUILDING MATERIALS AND CON-STRUCTION TEAMSTERS LOCAL NO. 216, Plaintiff–Appellee,

v.

GRANITE ROCK COMPANY, a corporation, Defendant–Appellant.

No. 87–1959.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1988.

Decided July 11, 1988.

Garry G. Mathiason, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendant-appellant.

Duane B. Beeson, Beeson, Tayer, Silbert & Bodine, San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, REINHARDT and LEAVY, Circuit Judges.

WALLACE, Circuit Judge:

Granite Rock Company (Granite Rock) appeals the district court's order granting summary judgment in favor of Building Materials and Construction Teamsters Local No. 216 (union). The district court's order requires the parties to arbitrate the question whether Granite Rock violated an implied covenant in the multi-union, multi-

employer bargaining agreement (agreement) to which it is a party. Granite Rock challenges the district court's determination of arbitrability on three grounds: (1) the union's grievance is not arbitrable because the union failed to demonstrate that its interpretation of the agreement was plausible; (2) the union's claim was decided adversely to the union in proceedings before the National Labor Relations Board (Board) and is therefore barred by principles of res judicata and collateral estoppel; and (3) the implied covenant, if it exists, is unenforceable because it violates section 8(e) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(e), and public policy. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Granite Rock operates various businesses in Northern California, including a concrete manufacturing plant in San Jose, California. The union represents employees in the construction industry, including ready-mix truck drivers, in San Francisco and San Mateo counties. Both Granite Rock and the union are parties to the agreement between six locals, including the union, and the Aggregates and Concrete Association of Northern California, Inc., an employer association of which Granite Rock is a member. The agreement covers ready-mix truck drivers operating out of signatory concrete plants within the geographical jurisdictions of the locals.

In 1984, Granite Rock's shareholders decided to reactivate Central Supply Company (Central), an assetless subsidiary of Granite Rock. Granite Rock lent Central more than $300,000 by making its line of bank credit available to its subsidiary. Central then created a new concrete ready-mix plant in San Mateo County and began business operations in 1985 under the name of Harbor Ready–Mix (Harbor).

On August 5, 1985, the union filed a grievance against Granite Rock, asserting that Harbor and Granite Rock were "alter egos" and that Granite Rock had breached the agreement by operating Harbor without applying the economic and hiring provisions of the agreement to Harbor's employees and by refusing to recognize the union as the representative of Harbor's employees. Granite Rock refused to process the grievance. Instead, it filed a unit clarification proceeding before the Board for the purpose of determining whether Harbor's employees were governed by the agreement.

In February 1986, the union brought this action in the United States District Court. In its complaint, the union sought to compel Granite Rock to comply with the grievance and arbitration provisions of the agreement with respect to its grievance concerning the establishment of Harbor. A few days after the complaint was filed, the Board's regional director held a hearing in the unit clarification proceeding initiated by Granite Rock. The regional director issued his decision on March 12, 1986, in which he rejected the union's alter ego claim and determined that the bargaining unit of ready-mix truck drivers at Granite Rock's San Jose plant did not include any of Harbor's employees. In reaching his decision, the regional director found that Harbor was not and never had been a signatory to the agreement, that Granite Rock and Harbor's business operations were dissimilar and that they neither shared nor exchanged personnel, and that Granite Rock did not play a consequential role in Harbor's business and personnel decisions. The union failed timely to appeal the regional director's decision and order, and the decision thereby became a final decision of the Board. NLRB Rules and Regulations § 102.67(b), (f), 29 C.F.R. § 102.67(b), (f) (1987).

Relying on the Board's order, Granite Rock moved for summary judgment in the union's action in the district court. Granite Rock argued that arbitration of the union's grievance would be futile because the Board's decision precluded the arbitrator from finding that the agreement applied to Harbor's employees. In response, the union filed a cross-motion for summary judgment, in which the union conceded that the Board's decision foreclosed arbitration on the representational question whether Har-

bor's employees were governed by the agreement. The union argued, however, that the Board's decision did not address or decide whether Granite Rock breached the agreement by establishing Harbor without applying the hiring and economic provisions of the agreement to Harbor's employees.

The district court granted the union's cross-motion for summary judgment. The court observed that while the Board's decision precluded arbitration of the representational issues decided by the Board, it did not bar arbitration of the remaining contractual issues raised by the union's complaint. Therefore, the court ordered arbitration of the question whether Granite Rock breached the agreement by establishing Harbor to compete with other employers without conforming to the hiring and economic provisions of the agreement.

Granite Rock moved under Fed.R.Civ.P. 59(e), to alter the district court's judgment. Granite Rock argued, among other things, that it was not required to arbitrate the union's grievance because any arbitration award favoring the union would necessarily conflict with NLRA § 8(e). On March 30, 1987, the district court granted in part and denied in part Granite Rock's motion to amend the judgment.

The district court agreed with Granite Rock that a clause requiring an employer to apply the hiring provisions of its agreement to a newly established business would facially violate NLRA § 8(e), which prohibits "work acquisition" agreements. The district court, however, found that a clause requiring an employer to apply the *economic* provisions of its agreement to a new business could be analogized to a "union standards" or "work preservation" clause, and thus might survive a facial attack under section 8(e). Consequently, the court modified its earlier decision by removing the issue involving the implied hiring provisions of the agreement from arbitration, and limited its order compelling arbitration to the following question: "Whether defendant has violated the collective bargaining agreement between the parties by establishing Harbor Ready Mix to compete with other employers covered by the agreement without conforming to the economic provisions of the agreement."

Granite Rock appeals the modified decision of the district court. The union has not appealed the district court's refusal to include the hiring provisions issue in the order compelling arbitration. We thus need decide only whether the district court erred in ordering the parties to arbitrate the question whether Granite Rock violated the agreement by establishing Harbor without ensuring that Harbor's employees would enjoy the economic benefits guaranteed to employees covered by the agreement. We review the district court's entry of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir. 1986). We will uphold the summary judgment if it clearly appears that no genuine issue of material fact remains for trial and that the union is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

II

Granite Rock argues that the district court erred in determining that the union's grievance is subject to the dispute resolution provisions of the agreement. The district court based its finding of arbitrability on section 18 of the parties' agreement, which provides that "[a]ll disputes arising under this agreement" shall be resolved in accordance with a procedure that requires, in order of priority, (a) discussions between the union and the employer, (b) referral to a Board of Adjustment, and (c) submission to an impartial arbitrator. The union alleged that Granite Rock violated an implied covenant in the agreement prohibiting Granite Rock from establishing a company that would compete with signatory employers without observing the economic provisions of the agreement. Granite Rock responded that the agreement could not reasonably be interpreted to include the implied covenant alleged by the union. Because the parties' dispute clearly involves the proper interpretation of the agreement, the district court correctly determined that the parties agreed to submit this dispute to

arbitration. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (*AT & T*) (holding that there is a strong presumption of arbitrability where the labor contract purports to subject "any" or "all" grievances related to contract interpretation to arbitration); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 568–69, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960) (*American Manufacturing*) (same).

Granite Rock contends that by determining that the union's grievance was arbitrable without first determining that the alleged noncompetition clause could "plausibly" be implied into the agreement, the court erroneously relinquished the question of arbitrability to the arbitrator. It is, however, too late in the day for Granite Rock to argue that a court must first determine that there is some merit to the union's claims before ordering the parties to arbitrate their dispute. The district court was not required to determine whether the union's claim rested on a "plausible" reading of the agreement. By providing that "[a]ll disputes arising under this agreement" shall be resolved through arbitration, the parties agreed "to submit *all* grievances to arbitration, not merely those which the court will deem meritorious." *American Manufacturing,* 363 U.S. at 568, 80 S.Ct. at 1346 (emphasis added). Where, as here, the parties have agreed to arbitrate all contractual disputes, the court's function is strictly limited to determining whether the union's claim on its face is governed by the contract. *Id.* at 567–68, 80 S.Ct. at 1346. Hence, once the court determines that the parties' dispute concerns the proper interpretation of the agreement, it has "no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Id.* at 568, 80 S.Ct. at 1346 (footnote omitted). This principle was recently reaffirmed in *AT & T,* where the Court explained:

Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. 475 U.S. at 649–50, 106 S.Ct. at 1419.

Granite Rock cannot, therefore, seriously dispute that a party who agrees to arbitrate any dispute governed by its collective bargaining agreement must do so even if the claim appears to be groundless. Nevertheless, it contends that a party seeking to compel arbitration of a claim allegedly governed by an *implied* contractual provision must produce some evidence that provides a basis for implying the alleged covenant into the agreement. Such evidence, Granite Rock suggests, would derive from some express provision of the agreement itself or from the parties' "past practice or bargaining history." According to Granite Rock, if employers can be required to arbitrate *any* dispute involving an implied covenant, without a showing that the covenant can reasonably be inferred from the provisions of the agreement, arbitrators will possess unlimited, unintended, and virtually unreviewable power to read a variety of implied covenants into every collective bargaining agreement. Looking to the circumstances of the instant case, Granite Rock argues that because the *only* evidence that the union presented in support of its alleged implied covenant was the agreement itself, and because the express provisions of the agreement provided absolutely no basis for implying such a covenant, the union's claim for arbitration must necessarily fail.

As we have already pointed out, the argument that a union's claim must be grounded on an explicit provision in the agreement was rejected almost three decades ago in *American Manufacturing.* There, the Supreme Court stated that where the parties have agreed to arbitrate all contractual disputes, a court has "no business ... determining whether there is particular language in the written instrument which will support the claim." 363 U.S. at 568, 80 S.Ct. at 1346. This is not to

say, however, that arbitration is required, as a matter of law, whenever a party asserts that another party breached its collective bargaining agreement. Nothing in our jurisprudence requires an employer who has not agreed to submit all contractual disputes to arbitration to submit any of its policies or decisions to the scrutiny of an arbitrator. The parties, not the courts, decide whether and to what extent their disputes will be subject to binding arbitration; it is the collective bargaining agreement that controls. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). A party who explicitly agrees to submit "all disputes" concerning the interpretation of its collective bargaining agreement to an arbitrator may not be heard to complain that it did not intend this provision to be read literally.

### III

Granite Rock also argues that the union is precluded from relitigating its implied covenant theory under principles of collateral estoppel and res judicata. This argument is, in turn, premised on its assertion that the union's claim that Granite Rock violated the agreement by establishing another company (Harbor) is inconsistent with the Board's determination that Granite Rock and Harbor "are not a single employer or alter egos of one another." The district court acknowledged that the Board's decision must take precedence over an inconsistent arbitration award, but found that the union's contractual claim involved issues distinct from the representational issues decided by the Board. We agree.

■ Res judicata bars subsequent litigation on a claim that was previously concluded by a judgment on the merits. *Parklane Hosiery, Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (*Parklane Hosiery*). Collateral estoppel "precludes relitigation of issues

actually litigated and necessary to the outcome of the first action." *Id.* These doctrines apply to administrative determinations, including those of the Board, when the agency's determinations have been made in a proceeding complying with standards of due process and when the findings are supported by substantial evidence in the administrative record. *Paramount Transport Systems v. Chauffeurs, Teamsters & Helpers, Local 150,* 436 F.2d 1064, 1065–66 (9th Cir.1971). The Board's decision takes "precedence over" the arbitrator's decision. *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1279 (9th Cir.1984) (*Stevens*), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). However, a Board decision takes precedence over an inconsistent arbitration award only when the dispute to be arbitrated involves representational issues. *Central Valley Typographical Union, No. 46 v. McClatchy Newspapers,* 762 F.2d 741, 747 (9th Cir.1985). There is a "critical distinction" between representational issues and general contractual issues arising under collective bargaining agreements. *Id.* Unless the union's contractual claim involves issues "inextricably bound up" with the representational issues decided by the Board, the Board's determination need not be accorded collateral estoppel effect. *See id.; see also Parklane Hosiery,* 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5 (collateral estoppel precludes relitigation of issues "actually litigated" and "necessary to the outcome" of the first action).

■ Granite Rock contends that the union's contractual claim is indistinguishable from the alter ego claim it litigated before the Board and is therefore barred under the doctrine of res judicata. The district court correctly rejected this argument. The representational question before the Board was whether the agreement should apply, as a matter of law, to Harbor's employees because Granite Rock and Harbor are a "single employer," or "alter egos" of one another. The union's contractual claim, in contrast, is based on the allegation that Granite Rock promised in the agreement to refrain from establishing a

separate company unless the economic standards provided in the agreement were applied to the separate company's employees. These claims are clearly distinct; the first alleges a breach of an ongoing legal duty to apply the provisions of the agreement to Harbor's employees, while the second alleges a completed breach of a contractual duty to refrain from establishing a separate company. The district court thus correctly determined that the union's grievance was not barred by res judicata.

■ Granite Rock's collateral estoppel argument fails for similar reasons. In deciding that Granite Rock and Harbor were not "alter egos" or a "single employer," the Board did not decide that Granite Rock owed no contractual duty to refrain from establishing Harbor without ensuring that Harbor's employees enjoyed the economic benefits guaranteed to Granite Rock's employees under the agreement. Instead, it examined the operations of the two companies and determined that they were distinct enough to preclude a finding that Harbor's operations are presently controlled by Granite Rock. *See Radio and Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam) (*Broadcast Service*) (under the single employer doctrine, Board inquires whether the two companies have interrelated operations, common management, centralized control of labor relations, and common ownership); *Stevens*, 743 F.2d at 1276–77 (under the alter ego doctrine, the Board examines factors similar to those implicated where employers are alleged to be a "single employer" to determine whether the bargaining unit of the signatory company is "effectively the same" as that of the second company). The Board's conclusion would not conflict with a finding that Granite Rock was initially responsible for putting Harbor into business, and that Granite Rock owed a contractual duty to refrain from this act unless it applied the economic standards provision of the agreement to Harbor's employees. The district court thus correctly determined that the Board's decision does not collaterally estop

the union from seeking arbitration on its contractual claim.

Granite Rock contends that even if the representational issues before the Board were distinct from the contractual issues underlying the union's grievance, the union is estopped from arguing that Granite Rock "established" Harbor because the Board determined that Central, a subsidiary of Granite Rock, established Harbor. Granite Rock argues that a finding that Granite Rock established Harbor would conflict with this explicit finding. We disagree. The Board found that "Central Supply Company d/b/a Harbor Ready Mix ... was established ... by Central Supply Company's Board of Directors...." The Board further found that "there has been common ownership of [Granite Rock] and Central Supply Company." The union claims that Granite Rock "reincorporated" a then-defunct subsidiary, Central, in order to establish Harbor. It alleges that Harbor's existence is thus attributable to the decisions and actions undertaken by Granite Rock's principals. The union's allegations are consistent both with the Board's finding that Harbor was legally "established" by Central's Board of Directors and with the finding that Granite Rock pledged its credit in order to capitalize Harbor. We conclude, therefore, that an arbitrator could conclude that Granite Rock was responsible for "establishing" Harbor in violation of an alleged contractual provision prohibiting this conduct without having to make factual determinations inconsistent with the Board's findings.

■ Even if we were to read the Board's decision as suggesting that Granite Rock did not establish Harbor, collateral estoppel can be invoked only if an issue was necessary to the outcome of the prior action. *Parklane Hosiery*, 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5. It was not necessary for the Board to decide if Granite Rock was responsible for "establishing" Harbor. The Board's conclusion that, at the time the union's grievance was filed, the two companies were neither "alter egos" nor a "single employer" would not have required that it find that Granite Rock was not responsible

for creating Harbor. Whether one company was responsible initially for creating another company is not one of the four factors that we consider in determining whether the two companies are presently "alter egos" or a "single company." *See Broadcast Service,* 380 U.S. at 256, 85 S.Ct. at 877; *Stevens,* 743 F.2d at 1276–77. Thus, even if the Board had found that Granite Rock did establish Harbor, such a finding was not necessary to its determination of the ultimate legal question before it, thereby rendering collateral estoppel inappropriate.

## IV

 Granite Rock claims that the alleged implied covenant would violate either NLRA § 8(e) or public policy. In *United Food and Commercial Workers Union v. Alpha Beta Co.,* 736 F.2d 1371, 1376–77 (9th Cir.1984) (*Alpha Beta* ), we recognized that a court could not compel arbitration if a contract clause on its face violated "all possible interpretations" of federal labor law or federal labor policy. The district court found that *Alpha Beta* did not bar arbitration on the grounds that an implied clause prohibiting an employer from establishing a separate business that does not observe the economic provisions of the collective bargaining agreement is similar to a "work preservation" or "union standards" clause, and thus facially valid under section 8(e) of the NLRA. *See NLRB v. Hotel & Restaurant Employees and Bartenders Union, Local 531,* 623 F.2d 61, 67 (9th Cir.1980) ("work preservation or union standards clauses are not prohibited by section 8(e)").

We need not reach the question whether the anti-double-breasting clause alleged to be present in this contract would violate 8(e)'s prohibition against work acquisition in this case. We do not read *Alpha Beta* as requiring us to decide whether an implied contractual provision would violate federal labor law where, as here, the parties dispute both the existence and the scope of the implied provision. "[A] conflict between an arbitrator's decision and federal labor law 'is necessarily speculative when the arbitrator has yet to rule.' " *Alpha Beta,* 736 F.2d at 1376, *quoting Hospital & Institutional Workers Union, Local 250 v. Marshal Hale Memorial Hospital,* 647 F.2d 38, 42 (9th Cir.1981). This is especially true where the parties cannot even agree that the clause, which is the subject of their dispute, exists as part of their agreement. Therefore, we are unable to determine at this stage of the litigation that "all possible interpretations" of the alleged clause facially violate federal labor law or public policy. *See Alpha Beta,* 736 F.2d at 1376–77. We decline to render an advisory opinion on the validity of the alleged noncompetition clause, and affirm the district court's order compelling arbitration of the union's grievance. We express no view on the merits of the union's grievance.

AFFIRMED.