**LAS VEGAS SANDS, INC, a Nevada Corporation, Plaintiff— Appellee,**

v.

**CULINARY WORKERS UNION LOCAL # 226, an unincorporated association, Defendant—Appellant.**

**Las Vegas Sands, Inc., a Nevada Corporation, Plaintiff— Appellant,**

v.

**Culinary Workers Union Local # 226, an unincorporated association, Defendant—Appellee.**

Las Vegas Sands, Inc., a Nevada
Corporation, Plaintiff–
Appellant.

v.

Culinary Workers Union Local # 226l
an unicorporated association,
Defendant–Appellee.

Nos. 02–16381, 02–16384, 03–15125.
D.C. Nos. CV–97–00467–PMP,
CV–97–00467–PRP/RLH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Decided Dec. 3, 2003.

**582**

G. Lance Coburn, David N. Frederick, Lionel, Sawyer & Collins, Las Vegas, NV, for Plaintiff–Appellee.

Andrew J. Kahn, McCracken, Stemerman, Bowen, Las Vegas, NV, for Defendant–Appellant.

Before THOMPSON, TROTT, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Culinary Workers Union Local # 226 ("Culinary") appeals the district court's order denying its motion to compel arbitration of a claim filed against it by Las Vegas Sands, Inc. ("LVSI") for breach of implied covenant of good faith and fair dealing. LVSI cross-appeals the district court's summary judgment dismissing its claim for breach of contract and its claim for tortious interference with economic advantage, to the extent that tort claim is predicated upon Culinary's lobbying activities. We have jurisdiction over these consolidated appeals under 28 U.S.C. § 1292(b). We reverse the district court's denial of Culinary's motion to compel arbitration of the implied covenant claim, and we affirm the district court's dismissal of LVSI's other claims.

### I.

We first address a portion of LVSI's cross-appeal: the district court's grant of summary judgment on the breach of contract claim. We review de novo the district court's construction and interpretation of the collective bargaining agreement ("CBA"). *See Carpenters Health and Welfare Trust Fund v. Bla–Delco Constr. Inc.*, 8 F.3d 1365, 1367 (9th Cir.1993).

Section 22.01 of the CBA prohibits Culinary from interfering with the "Employer's business." The district court interpreted the "Employer's business" to mean the Sands Hotel Casino ("the Sands"). It also determined that Culinary's campaign was directed only against the Venetian. We agree.

The first relevant document pertaining to the interpretation of the phrase "Employer's business" is the Memorandum of Agreement amending the prior CBA and extending the term through May 1997. In that Memorandum, the "Employer" is defined as "Las Vegas Sands, Inc. d/b/a Sands Hotel Casino." The designation "d/b/a" (or "doing business as") is a descriptive term identifying the *business* of LVSI. If LVSI operated several businesses, those other businesses would not have been included under the d/b/a Sands Hotel designation. The d/b/a designation limits the meaning of Employer to LVSI in its capacity as owner and operator of the Sands.

Next, § 4.01 of the CBA authorizes Culinary's representatives to enter the "Employer's establishment" to communicate with its members about union business. The section goes on to state that "[s]uch visits shall not interfere with the conduct of the Employer's business...." This section is useful because, like § 22.01, it uses the term "Employer's business." The "business" here clearly means operation of the Sands.

Perhaps most significant is § 28.01 of the CBA, which is read together with an

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

appended Side Letter Agreement. Section 28.01 broadly defines the term "Employer" to include subsidiaries and other entities under LVSI's control. The Side Letter Agreement establishes a "procedure ... to avoid picketing and/or other economic action directed at the Employer in the event the Union decides to conduct an organizing campaign at any operation (at which the Union does not have representation rights) covered by Section 28.01...."

Taken by itself, § 28.01 might suggest that the parties intended the "Employer" (and thus the "Employer's business") to encompass a broad scope. However, read together with the Side Letter Agreement, it becomes clear that the relevant provisions of § 22.01 pertain only to interference with the Sands. Otherwise, the Side Letter Agreement's prohibition of picketing and other economic activity at *other* Employer facilities would be superfluous.

LVSI argues that the Side Letter Agreement is not probative because it established a procedure for an organizational card check campaign, a circumstance not addressed by § 22.01. However, the Side Letter Agreement explicitly states that among its purposes is "to *avoid picketing and/or other economic action* directed at the Employer in the event the Union decides to conduct an organizing campaign ..." (emphasis added). Since picketing was already prohibited by § 22.01 (regardless of Culinary's motive), the Side Letter Agreement necessarily suggests that Culinary could otherwise have picketed at establishments other than the Sands.

While the district court relied on the above provisions, other instances in the CBA of the term "Employer's business" confirm the district court's interpretation. For example, § 23.01 provides that "[t]he right to manage the *Employer's business* and the direction of its employees ... are reserved to the Employer" (emphasis add-

ed). Examples of the Employer's business include "the right to direct, plan and control operations, to determine the number of employees to be employed, and to determine the means, methods and schedules of operations." This suggests "business" means hotel and casino operation, not real estate development. Similarly, § 28.01 requires the Employer to give advance notice and to honor its payment obligations "[i]n the event the Employer sells or assigns its business." The sale of unrelated businesses by LVSI would clearly not trigger the notice and payment requirement here. As in § 22.01, the parties did not deem it necessary to specify which "business" because LVSI had only one business covered by the CBA—the Sands.

The district court also determined that extrinsic evidence weighed in favor of its interpretation. LVSI contends that the use of extrinsic evidence by the district court was improper. Generally, Nevada's parol evidence rule bars the use of extrinsic evidence when the terms of a contract are unambiguous. *Crow–Spieker No. 23 v. Robinson,* 97 Nev. 302, 629 P.2d 1198, 1199 (1981). We need not determine whether use of extrinsic evidence was proper here because the same interpretation would obtain even without the introduction of parol evidence.

LVSI further argues that even if "Employer's business" means the Sands, Culinary interfered with the Sands itself. LVSI's argument is unconvincing because all of the union's activities were directed against the Venetian, not the Sands. LVSI cites letters sent to potential investors and customers that specifically named the Sands. The earliest of these letters, however, was sent after the Sands announced its closure and only six days before the Sands shut its doors. Other letters were sent after the Sands was demolished and its business ceased to exist. The references in these letters to the

"Sands Hotel" served merely to identify the yet-unnamed resort and yet-unknown owner in Culinary's campaign against the Venetian.

Accordingly, we conclude that "Employer's business" as used in § 22.01 of the CBA refers only to the Sands, and that Culinary did not violate this provision in its campaign against the Venetian. We therefore affirm the district court's summary judgment in favor of Culinary on this issue.

## II.

■ We next turn to Culinary's appeal of the district court's denial of its motion to compel arbitration. We review de novo the district court's determination of the scope of an arbitration clause and its denial of a motion to compel arbitration. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1169 (9th Cir.2003); *Moore v. Local 569 of Int'l Bhd. of Elec. Workers*, 53 F.3d 1054, 1055 (9th Cir.1995). The CBA specifically exempts "[a]ny violation or alleged violation of Section 22.01" from arbitration. The district court held that LVSI's claim for breach of the implied covenant of good faith and fair dealing is exempt from arbitration because it is encompassed by § 22.01. We disagree.

An implied covenant claim necessarily arises from more than a singular contract provision. In *Teamsters Local 216 v. Granite Rock*, 851 F.2d 1190, 1193 (9th Cir.1988), *cert. denied* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988), we held that an implied covenant claim was subject to a CBA arbitration clause "[b]ecause the parties' dispute clearly involves the proper interpretation of the agreement[.]" Issues such as the nature of the contractual relationship and what the parties expected from one another as fair treatment are relevant to this inquiry. Because the implied covenant claim implicates the entire CBA, arbitration is the proper forum for

its resolution. The fact that the implied covenant claim is related to the § 22.01 claim does not preclude its arbitrability. The Supreme Court rejected the so-called "intertwinement" doctrine in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221–24, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

Moreover, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The only non-arbitrable claim under the CBA is for "violation or alleged violation of Section 22.01." This does not preclude arbitration of the breach of implied covenant claim.

LVSI also argues that Culinary waived its right to arbitration because it did not first invoke the Grievance and Arbitration Procedure described in the CBA. We disagree. "[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial interpretation." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). LVSI's waiver argument is unavailing.

## III.

■ We turn now to LVSI's cross-appeal of the district court's entry of partial summary judgment against it on its tortious interference claim. The district court granted partial summary judgment in favor of Culinary to the extent LVSI's claims were based on Culinary's lobbying activity. Such activity, according to the district court, was immune from civil liability under the *Noerr–Pennington* doctrine.

LVSI argues that *Noerr–Pennington* immunity should not apply to Culinary's lobbying efforts because (1) Culinary's lobbying efforts were a "sham," and (2) Culinary waived its *Noerr–Pennington* immunity by agreeing to § 22.01 of the CBA, the non-interference clause. Because we have decided that § 22.01 precluded campaigning only against the Sands, not against the Venetian, the LVSI's waiver argument fails.

LVSI's sham contention also fails. For a plaintiff to succeed in invoking the sham exception to defeat *Noerr–Pennington* immunity, a plaintiff must plead with specificity the "sham-ful" nature of the alleged interference. "[W]hen a plaintiff seeks damages for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir.1998), quoting *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir.1976).

LVSI's allegations fall short of the required specificity. LVSI alleged that Culinary appeared before the Clark County Board of Commissioners (the "Board") to oppose LVSI's applications for various permits and approvals, but does not specify what information Culinary presented to the Board, whether the Board in fact rejected LVSI's permit applications, whether Culinary was alone in opposing the permit applications, or whether Culinary's grounds for opposing the permit applications were false or "objectively baseless."

At oral argument before this court, LVSI contended that it raised sufficiently specific allegations to invoke the sham exception at the district court's summary judgment hearing. At that hearing, however, LVSI *conceded* that Culinary's lobbying activity would be protected by *Noerr–Pennington*; its argument was that Culinary, in § 22.01 of the CBA, waived its right to lobby. *See* District Court Hearing Transcript of hearing held April 8, 1999, at page 24 ("Our position, as expressed in our brief, I think it's pretty clear is that if they had the right to lobby, *and they did, everybody does,* they waived it, they gave it up as part of the contract . . . .") (emphasis added). Accordingly, we affirm the district court's grant of partial summary judgment. The appellant and the appellee shall each bear their own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.